UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOEL FALLER, | ECF CASE |
| Plaintiff, | NO.: 7:25-cv-1604-JGLC |
| v. | |
| BREEZY POINT ENERGY CORP. AND ARI GOLDSTEIN, JOINTLY AND SEVERALLY, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Date:  May 30, 2025
New York, New York

LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170
212.392.4772
*Plaintiff's Counsel*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 3

STATEMENT OF MATERIAL FACTS ........................................................................ 4

LEGAL ARGUMENT ..................................................................................................... 6

I.      THE FIRST AMENDED COMPLAINT SHOULD NOT BE DISMISSED BASED
        ON THE STANDARD OF REVIEW .................................................................. 6

II.     EXCEPTIONS TO THE FIRST-TO-FILE RULE APPLY HERE ................................... 7

        A.      The Special Circumstances Exception Applies to the First-to-File Rule. .............. 7

        B.      The Balance of Convenience Exception Applies To the First-to-File Rule. .......... 8

                1.      Plaintiff's choice of forum favors this action, over the Montana Action. .. 9

                2.      The convenience of witnesses favors this action, over the
                        Montana Action. ...................................................................... 10

                3.      The location of relevant documents and relative ease of access to
                        sources of proof favors this action, over the Montana Action. ................. 11

                4.      The convenience of parties favors this action, over the
                        Montana Action. ...................................................................... 11

                5.      The locus of operative facts favors this action, over the
                        Montana Action. ...................................................................... 12

                6.      The availability of process to compel the attendance of unwilling
                        witnesses favors this action, over the Montana Action........................... 12

                7.      The relative means of the parties favors this action, over the
                        Montana Action. ...................................................................... 12

                8.      The forum's familiarity with the governing law favors this action,
                        over the Montana Action. .......................................................... 13

                9.      Trial efficiency and the interest of justice favors this action,
                        over the Montana Action. .......................................................... 13

III.   PLAINTIFF'S CLAIMS ARE NOT COMPULSORY COUNTERCLAIMS TO THE MONTANA ACTION ................................................................ 14

IV.   THE BREACH OF CONTRACT CLAIM IS WELL PLED. ......................................... 16

V.   THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS WELL PLED SINCE IT SEEKS DAMAGES SEPARATE FROM THE BREACH OF CONTRACT CLAIM AND RELIES ON DIFFERENT ALLEGATIONS ................................................................................................ 19

VI.   THE RETALIATION'S CLAIM IS WELL PLED. ........................................................ 22

    A.   Firing Plaintiff For His Repeated Complaints About Not Getting Paid Is A Valid Retaliation Claim Under N.Y. Lab. Law § 215. ..................................... 22

    B.   Filing A Meritless, Bad Faith Lawsuit In Response to Plaintiff's Complaint About Not Getting Paid Is A Valid Retaliation Claim Under N.Y. Lab. Law § 215. ........................................................................................ 23

CONCLUSION ...................................................................................................................... 25

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Adam v. Jacobs*,
   950 F. 2d 89 (2d Cir. 1991) ................................................................................................ 15

*Anthony L&S, LLC v. Doherty*,
   No. 13-CV-5495 (PAE), 2014 U.S. Dist. LEXIS 2625 (E.D.N.Y. Jan. 8, 2014) ................... 15

*Arugs Mgmt. Corp. v. Siemens Corp.*,
   No. 11-cv-1923, 2011 U.S. Dist. LEXIS 108581 (S.D.N.Y. Sept. 23, 2011) ........................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................ 6, 21

*Beyond Bespoke Tailors, Inc. v. Barchiesi*,
   No. 20-cv-5482 (VSB), 2022 U.S. Dist. LEXIS 25087 (S.D.N.Y. Feb. 11, 2022) ................. 10

*Bezuszka v. L.A. Models, Inc.*,
   No. 04–CV–7703 (NRB), 2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 24, 2006) ............. 15

*Birner v. Kensington Vanguard Holdings, LLC*,
   No. 24-cv-2743 (LTS)(JW), 2025 U.S. Dist. LEXIS 61611 (S.D.N.Y. Mar. 31, 2025) .... 16, 17

*Bonadio v. E. Park Research, Inc.*,
   220 F.R.D. 187 (N.D.N.Y. 2003) ......................................................................................... 15

*Bos. Consulting Grp., Inc. v. NCR Corp.*,
   No. 19-cv-10156 (LGS), 2020 U.S. Dist. LEXIS 175812 (S.D.N.Y. Sept. 4, 2020) ......... 19, 20

*Brown v. N.Y. City Hous. Auth.*,
   No. 05-cv-10332, 2006 U.S. Dist. LEXIS 30193 (S.D.N.Y. May 16, 2006) .......................... 18

*Castagna v. Luceno*,
   No. 09-cv-9332 (CS), 2011 U.S. Dist. LEXIS 45567 (S.D.N.Y. April 26, 2011) ................... 22

*CGI Solutions LLC v. Sailtime Licesning Group, LLC*,
   No. 05-cv-4120 (DAB), 2005 U.S. Dist. LEXIS 28878 (S.D.N.Y. NOV. 17, 2005) ................ 8

*Cooney v. Osgood Machiner, Inc.*,
   81 N.Y.2d 66 (1993) ............................................................................................................ 13

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
   233 F.3d 697 (2d Cir. 2000) ................................................................................................ 14

*Digilytic Intl. FZE v. Alchemy Fin., Inc.*,
  No. 20-cv-4650 (ER), 2022 U.S. Dist. LEXIS 57765 (S.D.N.Y Mar. 29, 2022) .............. 16, 20

*Emplrs. Ins. v Fox Entertainment Group, Inc.*,
  522 F3d 271 (2d Cir. 2008) ........................................................................................ 9

*Esmilla v. Cosmopolitan Club*,
  936 F. Supp. 2d 229 (S.D.N.Y. 2013) ...................................................................... 23

*ESPN, Inc. v. Quicksilver, Inc.*,
  581 F. Supp. 2d 542 (S.D.N.Y. 2008) ...................................................................... 11

*Eve Sales Corp. v. Maries Sharp's USA, LLC*,
  No. 24-cv-2757 (PKC), 2025 U.S. Dist. LEXIS 33901 (S.D.N.Y. Feb. 24, 2025) ........... 7, 8, 9

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d at 217 (2d Cir. 1978) .................................................................................. 8

*Fiance One Public Co. Ltd. v. Leham Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005) ...................................................................................... 13

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
  195 F. Supp. 3d 613 (S.D.N.Y. 2016) ........................................................................ 13

*Full Circle United, LLC v. Skee-Ball, Inc.*,
  No. 11-cv-5476 (LB), 2014 U.S. Dist. LEXIS 202841 (E.D.N.Y. May 13, 2014) ................. 20

*Harris v. Provident Life & Accident Ins. Co*.,
  310 F.3d 73 (2d Cir. 2002) ........................................................................................ 19

*Havas Worldwide New York, Inc. v. Lionsgate Entertainment Inc.*,
  15-cv-5018 (KBF), 2015 U.S. Dist. LEXIS 132050 (S.D.N.Y. Sept. 29, 2015) ...................... 8

*Herbert Ltd. P'ship v. Elec. Arts Inc*.,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004) ........................................................................ 10

*Iragorri v. United Techs. Corp*.,
  274 F.3d 65 (2d Cir. 2001) ........................................................................................ 9

*Jackson v. Avis Rent A Car Sys., LLC*,
  No. 14-cv-1658 (LLS), 2015 U.S Dist. LEXIS 29166 (S.D.N.Y. Mar. 6, 2015) .................... 10

*Jaquez v. Dermpoint, Inc.*,
  No. 20-cv-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021) .................... 6

*Johnson v. Corporate Express, Inc*.,
  No. 20-CV-4627 (LDH) (MMH), 2022 U.S. Dist. LEXIS 60826 (E.D.N.Y. Mar. 31, 2022) . 15

*Jones v. Ford Motor Credit Co.*,
  358 F.3d 205 (2d Cir. 2004) ................................................................................ 14

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) .................................................................................. 6

*Keybanc v. Cap Mkts., Inc. v. Extreme Steel, Inc.*,
  710 F. Supp. 3d 239 (S.D.N.Y. 2024) ............................................................. 21, 22

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
  17 F. Supp. 3d 385 (S.D.N.Y. 2014) .................................................................... 11

*Martignago v. Merrill Lynch & Co.*,
  No. 11-cv-3923 (PGG), 2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. Jan. 12, 2012) .................... 12

*McGraw-Hill Cos., Inc. v. Jones*,
  No. 12-cv-7085 (AJN), 2014 U.S. Dist. LEXIS 33411 (S.D.N.Y. Mar. 12, 2014) ............. 9, 10

*Moonsung Kim v. Lee*,
  576 F. Supp. 3d 14 (S.D.N.Y. 2021) ..................................................................... 23

*Mt. Meadows Pet Prods. v. NT Consulting, LLC*,
  No. 24-22 (GF), 2024 U.S. Dist. LEXIS 173696 (D. Mont. Sept. 25, 2024) ......................... 24

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007) .................................................................................. 7

*Robledo v. No. 9 Parfume Leasehold*,
  No. 12-cv-3579 (ALC)(DF), 2013 U.S. Dist. LEXIS 57383 (S.D.N.Y. April 9, 2013) .......... 22

*Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*,
  202 F. Supp. 3d 399 (S.D.N.Y. 2016) .................................................................... 11

*Schechter v. Tauck Tours, Inc.*,
  17 F. Supp. 2d 255 (S.D.N.Y. 1998) ..................................................................... 10

*Seltzer v. Omni Hotels*,
  No. 09-cv-9115 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 104495
  (S.D.N.Y. Sept. 30, 2010) ............................................................................... 12, 13

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018) ................................................................................ 19

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
  No. 16-cv-5950 (AJN), 2017 U.S. Dist. LEXIS 168187 (S.D.N.Y. Sept. 27, 2017) .............. 12

*Torres v. Gristede's Operating Corp.*,
  628 F. Supp. 2d 447 (S.D.N.Y. 2008) ............................................................... 15, 23

v

*Treoor Sportswear Co., Inc. v. The Ltd. Stores, Inc.*,
    865 F.2d 506 (2d Cir. 1989) .................................................................................... 18

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................................... 13

*Warman v. Am. Nat'l Stds. Inst.*,
    No. 15-cv-5486 (RA), 2016 U.S. Dist. LEXIS 87415 (S.D.N.Y. Jul. 6, 2016) ...................... 14

*Zigler v. Featherstone Foods, Inc.*,
    No. 20-cv-2462, 2021 U.S. Dist. LEXIS 8547 (S.D.N.Y. Jan. 15, 2021) ................................ 17

## STATUTES

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 6

Fed. R. Civ. P. 13(a) ............................................................................................................ 14

Fed. R. Civ. P. 45(b)(2)(A)-(B) ........................................................................................... 12

<u>PRELIMINARY STATEMENT</u>

This case is about an employer firing its New York-based employee for complaining about not getting paid; and that employer then filing a frivolous lawsuit in Montana when that employee expressed his intent to sue. This is all unlawful. Defendants, now being held accountable for their actions, are trying to escape the consequences of their action with their Motion to Dismiss the First Amended Complaint. All of the claims are, however, well pled.

In their first attempt to dismiss the FAC, Defendants argue Plaintiff was compelled to file these claims as counterclaims in the Montana action but that argument ignores two of the exceptions to the "first-to-file" rule apply here. First, courts will favor the second action where, like here, the defendant was advised of plaintiff's intent to sue and then rushed to court to file its own suit, which includes declaratory relief. Courts will also favor the second action when it is more convenient for the parties and witnesses than the first action. That is the precise situation here: Plaintiff lives in New York; Defendant Goldstien lives in New Jersey; Defendant Breezy Point's corporate headquarters is in New Jersey; and the witnesses are in New York or New Jersey. The only meaningful connection to Montana is that Breezy Point is incorporated in that state and Defendants wanted to do business there. Balancing this, New York is far more convenient than Montana. Indeed, Defendants filed their lawsuit in Montana precisely to make it *inconvenient* for Plaintiff.

On top of this, Plaintiff's claims are not compulsory counterclaims to the Montana action, which focuses on a Consulting Services Agreement that the parties entered into and that expired by the end of June 2023. Plaintiff's claims here have nothing to do with that agreement and concern what transpired *after* that agreement expired.

Defendants next argue Plaintiff's breach of contract claim should be dismissed because the alleged contract is no different than the Consulting Services Agreement. That argument misses a fundamental fact: that agreement expired. With that agreement having expired, Defendants were under no obligation to pay Plaintiff and Plaintiff was under no obligation to work for Defendants. Those mutual obligations only arose *after* the agreement expired and Defendants then agreed to employ Plaintiff as their Chief Investment Officer, making it a lawful contract. And with Defendants failing to pay Plaintiff, they breached the contract.

Defendants' argument on dismissing the breach of the implied covenant of good faith and fair dealing claim similarly ignores key allegations. Despite what Defendants argue, this claim is based on different allegations and seeks different relief than the breach of contract claim. The claim, on top of this, is sufficiently definite to put Defendants on notice of it.

Defendants also try to dismiss Plaintiff's retaliation claims by mischaracterizing and ignoring important allegations. This claim has two parts, both are well pled. First, the FAC sufficiently pleads a retaliation claim by alleging Defendants fired him for "repeatedly complaining" about not getting paid. Defendants, however, claim Plaintiff's pleading burden is to identify the specific dates when he made those complaints. Yet they cite no authority for that. The second part of this claim focuses on the Montana action and is well pled because it specifies that the Montana action was filed in bad faith and in retaliation for Plaintiff expressing his intent to sue Defendants. Defendant, however, ignores those key allegations.

In the end, the FAC is well pled. Defendants' motion should be denied and the case should proceed in this Court.

2

PROCEDURAL HISTORY

On January 3, 2025, Plaintiff, through counsel, sent Defendants a letter in which he asserts Defendants failed to pay him his owed wages and fired him in retaliation for complaining about the owed wages. (Goldstein Dec.[1], Exhibit 2). Two weeks later, Defendant Breezy Point filed its January 17, 2025 Complaint against Plaintiff in the Montana First Judicial District Court, Lewis and Clark County ("Montana Action"). (FAC[2], Exhibit B). In the Montana Action, Defendant Breezy Point asserts the following claims against Plaintiff: (i) the parties entered into an independent contractor relationship for consulting work to be performed in Montana; and (ii) he materially breached a Consulting Services Agreement and the implied covenant of good faith and fair dealing. (*Id.*).

On February 25, 2025, Plaintiff filed in this Court his original Complaint against Defendants, asserting the following claims: unpaid salary under the New York Labor Law; retaliation under the Labor Law; breach of contract; and breach of the implied covenant of good faith and fair dealing. (Doc. No. 1). Defendants, in response, filed their April 22, 2025 Motion to Dismiss that Complaint. (Doc. No. 9). Plaintiff, in turn, filed the May 1, 2025 First Amended Complaint that asserts the same claims as the original Complaint. (Doc. No. 11).

Meanwhile, in Montana, Plaintiff removed the Montana Action from Montana State court to the U.S. District Court for the District Court of Montana. He, subsequently, filed his May 2, 2025 motion to transfer the Montana Action to this Court under 28 U.S.C. § 1404. That motion is pending.

---

[1] May 16, 2025 Declaration of Ari Goldstein (Doc. No. 12) ("Goldstein Dec.").
[2] Plaintiff's May 1, 2025 First Amended Complaint (Doc. No. 11) ("FAC").

STATEMENT OF MATERIAL FACTS[3]

Background

Defendant Breezy Point's mission is, according to its website, to provide net-zero renewable energy infrastructure solutions for B-to-B companies wishing to utilize today's leading edge renewable energy solutions. (FAC ¶ 1). Defendant Goldstein is its owner and Chief Executive Officer. (FAC ¶ 2).

Consulting Services Agreement Period

On June 3, 2023, Plaintiff Faller and Defendants entered into a "Consulting Services Agreement" under which Plaintiff Faller agreed to provide them investment services. (FAC ¶ 11-12, Exhibit A). The Consulting Services Agreement states it terminates after one month of the parties executing it, and that "any extension of the Term will be subject to a mutual written agreement between you and the Company . . ." (*Id.*). Plaintiff Faller and Defendants never entered into a written agreement extending the time period of the Consulting Services Agreement, resulting in the Agreement terminating by June 30. (FAC ¶¶ 13-14).

Employment Period

In or around July 2023, after the Consulting Services Agreement expired, Defendants agreed to employ Plaintiff Faller and gave him the title of Chief Investment Officer. (FAC ¶ 16). Plaintiff Faller, throughout his employment with Defendants, worked out of his residences in Westchester, New York. (*Id.* ¶ 18). Defendants agreed to compensate him for these services by paying him $10,000 per month and awarding him 250 equity shares. (*Id.* ¶ 20).

Despite the agreement on his consideration, Defendants partially paid him his monthly salary in the first two months and then stopped paying him entirely. (*Id.* ¶¶ 23-24, 27). Plaintiff

---

[3] This is based solely on the allegations in the FAC.

Faller repeatedly complained to Defendant Goldstein about not getting paid. (*Id.* ¶ 25). Defendant Goldstein, trying to quiet his complaints, promised he would give Plaintiff Faller 1,500 additional equity shares and increase his monthly salary from $10,000 to $25,000 after certain deals close, telling him "When deals are closed, you will be raised up to c suite level compensation 250-350k a year." (*Id.* ¶ 26).

In October 2024, Defendants fired Plaintiff Faller and told him he was being fired for lack of communication, but that was not the real reason. (*Id.* ¶¶ 30-32). They fired him because he was complaining about not getting paid. (*Id.* ¶ 30).

Montana Action

A few months later, on January 3, 2025, Plaintiff Faller, through counsel, sent Defendants a letter in which Plaintiff Faller asserts Defendants failed to pay him his owed wages and retaliated against him for complaining about the owed wages. (*Id.* ¶ 34). Defendants did not respond to the letter. Defendant Breezy Point, instead, filed the January 17, 2025 lawsuit against Plaintiff Faller in the Montana First Judicial District Court, Lewis and Clark County ("Montana Action"). (FAC ¶¶ 35-35, Exhibit B).

In the Montana Action, Defendant Breezy Point claims jurisdiction exists under Montana's long arm statute. The Montana Action does not, however, include any allegations to show that statute's requirements are met. (*Id.* ¶ 40).

Failure to Provide Necessary Financial Documents

Back when Defendants were employing him, Plaintiff Faller had numerous meetings with prospective investors. (*Id.* ¶ 43). During those meetings, the prospective investors requested that he provide them various Defendant Breezy Point documents, including financial statements and

documents confirming land Defendant Breezy Point owned or was intending to own, explaining those documents are necessary for them to invest in Defendant Breezy Point. (*Id.* ¶ 44).

Plaintiff Faller, in turn, requested those financial statements from Defendant Goldstein but he did not provide him with those requested financial statements. (*Id.* ¶¶ 45-46). This had serious consequences. Because Defendant Goldstein did not provide Plaintiff Faller with the requested financial statements, the prospective investors did not invest in Defendant Breezy Point. (*Id.* ¶ 46) And with the prospective investors not investing in Defendant Breezy Point, Defendants did not increase Plaintiff Faller's salary. (*Id.* ¶¶ 47-48).

<u>LEGAL ARGUMENT</u>

I.    THE FIRST AMENDED COMPLAINT SHOULD NOT BE DISMISSED BASED ON THE STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In doing so, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Jaquez v. Dermpoint, Inc.*, No. 20-cv-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *6 (S.D.N.Y. May 20, 2021) (quoting *Horizon Comics Prods., Inc. v. Marvel Ent., LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (internal citation omitted)).

Under Rule 8(a)(2), the notice pleading requirement is met with a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

district court's inquiry, at this stage, is merely whether the complaint pleads "'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 548).

The FAC pleads a set of facts upon which Plaintiff Faller would be entitled to relief, especially when the Court takes all facts alleged as true and draws all reasonable inferences in his favor. Defendants' motion should be denied.

II.    <u>EXCEPTIONS TO THE FIRST-TO-FILE RULE APPLY HERE</u>

While the Montana Action was filed first, two exceptions apply to the first-to-file rule. Both apply. This Court should thus favor this action over the Montana Action.

The first-to-file rule is not impenetrable. Exceptions exist. *Eve Sales Corp. v. Maries Sharp's USA, LLC*, No. 24-cv-2757 (PKC), 2025 U.S. Dist. LEXIS 33901, at *11 (S.D.N.Y. Feb. 24, 2025) ("the [first-to-file] rule does not constitute an invariable mandate. It is only a presumption that may be rebutted by proof of proceeding in the forum of the second-filed action."). Two exceptions exist to the first-to-file rule that justify giving precedence to the later-filed action: (1) special circumstances and (2) the balance of convenience. *See Eve Sales Corp.*, 2025 U.S. Dist. LEXIS 33901, at *12-*17. While only one exception most apply to favor this action, both apply.

A.    <u>The Special Circumstances Exception Applies to the First-to-File Rule.</u>

The first-to-file rule does not apply when a party races to the court to beat the other to seek declaratory relief. Namely, "When a notice letter informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit, courts have found, in the exercise of discretion, in favor of the second-filed action." *Eve Sales Corp.*, 2025 U.S. Dist. LEXIS 33901, at *12-*17 (quoting *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995) (finding a declaratory judgment action was improperly anticipatory where it was filed two

days after the parties communicated under a notice letter from the "natural plaintiff" informing the adversary of its intention to file suit); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d at 217, 219 (2d Cir. 1978) (favoring the second filed action where a notice letter, which preceded the first-filed action, communicated an intent to file suit); *CGI Solutions LLC v. Sailtime Licesning Group, LLC*, No. 05-cv-4120 (DAB), 2005 U.S. Dist. LEXIS 28878, *10-13 (S.D.N.Y. NOV. 17, 2005) (favoring second filed action where a notice was sent from defendant's attorney to plaintiffs warning of a lawsuit and plaintiff, in turn, initiated an action seeking declaratory relief); *Havas Worldwide New York, Inc. v. Lionsgate Entertainment Inc.*, 15-cv-5018 (KBF), 2015 U.S. Dist. LEXIS 132050 (S.D.N.Y. Sept. 29, 2015) (same).

This applies here. The January 3 letter from Plaintiff's counsel (i) advised Defendants of Plaintiff's intent to sue them and the bases for those claims and (ii) the date by when Plaintiff intended to file the lawsuit. (Goldstein Dec., Ex. 2). Defendants, two weeks later, filed the Montana action in which they seek exclusively declaratory relief in their third cause of action under Montana's Uniform Declaratory Judgments Act, declaring that Defendant was at all relevant times and breached the Agreement at issue. (Montana Action, ¶¶ 33-35, Wherefore Provision ¶ C, FAC Ex. A). Under these circumstances, this Court should favor the second-filed action: this one. *Eve Sales Corp.*, 2025 U.S. Dist. LEXIS 33901, at *12-*17.

    B.    <u>The Balance of Convenience Exception Applies To the First-to-File Rule.</u>

Because, on balance, it would be more convenient for Plaintiff's claims to be litigated here versus in Montana, this exception applies to the first-to-file rule. This action should be favored over the Montana action.

"The balance of convenience exception provides an additional basis to depart from the first-filed rule in this case." *Eve Sales Corp.*, 2025 U.S. Dist. LEXIS 33901, at *17-18. As the

Second Circuit has recognized, the "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Employers Insurance of Wausau*, 522 F.3d at 275 (quoting *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002)). Here are those factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties…. [and] "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice." *Eve Sales Corp.*, 2025 U.S. Dist. LEXIS 33901, at *17-18 (internal quotations omitted). Each of these factors favors this exception applying.

      1.    <u>Plaintiff's choice of forum favors this action, over the Montana Action.</u>

A plaintiff's choice of forum is generally afforded deference unless the balance of factors strongly favors the alternative forum. *See McGraw-Hill Cos., Inc. v. Jones*, No. 12-cv-7085 (AJN), 2014 U.S. Dist. LEXIS 33411, at *7 (S.D.N.Y. Mar. 12, 2014). Courts consider, in weighing this, the connection between the forum and the operative facts. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).

Here, Plaintiff's choice of forum should be given significant difference because the balance of factors strongly favor it. Namely, Plaintiff negotiated and performed his contract within the Southern District of New York, where he similarly received payment under his contract and was

terminated from employment. (Faller Dec.[4] ¶¶ 8, 10). He, in fact, travelled to Montana only once. (Faller Dec. ¶ 11).

Alternatively, Defendant's choice of forum in Montana does not warrant deference because this dispute has tenuous connections to Montana: it is the state of incorporation for Defendant Breezy Point; a Montana governing law provision exists in a now-expired contract; and Plaintiff Faller went to that state once during his employment. (FAC ¶¶ 9, 11, 16). These connections are insufficient to justify litigating this action in Montana.

While Defendants may argue the Consulting Services Agreement has a Montana choice of forum provision, it does not. The Agreement does have a section header labeled "Governing Law and Jurisdiction," but that section is silent on the choice of venue. (FAC, Ex. A § 15).

This factor, overall, favors litigating in this forum.

> 2.    The convenience of witnesses favors this action, over the Montana Action.

Courts generally regard the convenience of party and non-party witnesses as the most important factor. *See Jackson v. Avis Rent A Car Sys., LLC*, No. 14-cv-1658 (LLS), 2015 U.S Dist. LEXIS 29166, at \*3 (S.D.N.Y. Mar. 6, 2015). Courts give greater weight to the convenience of non-party witnesses than party witnesses. See *McGraw-Hill,* 2014 U.S. Dist. LEXIS 33411, at \*7.

Courts do not simply count witnesses by forum; rather, they "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). The analysis centers on which forum allows the trier of fact to hear live testimony from more key witnesses. *See Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 261 (S.D.N.Y. 1998).

---

[4] May 30, 2025 Declaration of Noel Faller ("Faller Dec."). *See Beyond Bespoke Tailors, Inc. v. Barchiesi*, No. 20-cv-5482 (VSB), 2022 U.S. Dist. LEXIS 25087, at \*15 (S.D.N.Y. Feb. 11, 2022) (permitting opposing party to rely on a declaration in opposing a motion to transfer).

No probative witness resides in or near Montana. (Faller Dec. ¶¶ 13, 15). They rather, live closer to this District than Montana: Plaintiff lives in New York; Defendant Goldstein lives in New Jersey; and the two other possible witnesses are in New York. (*Id.*). This factor weighs strongly in favors of this action.

       3.       The location of relevant documents and relative ease of access to sources of proof favors this action, over the Montana Action.

Modern technology has lessened the importance of the physical location of documents. *See ESPN, Inc. v. Quicksilver, Inc.,* 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). In any case, Defendants' records are likely in New Jersey, which is far closer to New York than Montana. To the extent this factor still matters in this modern era, it supports favoring this action over the Montana action.

       4.       The convenience of parties favors this action, over the Montana Action.[5]

Transfer or dismissal under the first-to-file rule is favored where it increases convenience for the moving party without significantly burdening the non-moving party. *See Liberty Mut. Ins. Co. v. Fairbanks Co*., 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). Courts often consider the parties' principal places of business. *See Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc*., 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016).

It is wholly inaccurate to argue that litigating in Montana, instead of New York, would convenience Defendant without significantly burdening Plaintiff. Both parties are based in New York (Plaintiff) or New Jersey (Defendant), making this more convenient. (Faller Dec. ¶¶ 5-10). By contrast, it would be far more inconvenient to make Plaintiff to travel to Montana to litigate this case. Weighing all of this, this factor favors this action over the Montana action.

---

[5] Plaintiff Faller has pending motion to transfer the Montana Action to this Court.

5.    The locus of operative facts favors this action, over the Montana Action.

The locus of operative facts, where the events giving rise to the claim occurred, is a key factor. *See Tianhai Lace USA Inc. v. Forever 21, Inc.*, No. 16-cv-5950 (AJN), 2017 U.S. Dist. LEXIS 168187, at *4 (S.D.N.Y. Sept. 27, 2017). The operative facts happened here: Plaintiff worked in New York, with the exception of one brief trip to Montana or the occasional visit to Defendants in New Jersey; and he was fired while in New York and while Defendants were in New Jersey. (FAC ¶¶ 29-31; Faller Dec. at ¶ 11). Any connection to Montana, weighed against these facts, is ancillary, at best. New York is thus the locus of operative facts.

6.    The availability of process to compel the attendance of unwilling witnesses favors this action, over the Montana Action.

The ability to compel testimony from key witnesses is a significant factor in assessing whether an exception to the first-to-file rule is appropriate. *See Martignago v. Merrill Lynch & Co.*, No. 11-cv-3923 (PGG), 2012 U.S. Dist. LEXIS 4365, at *8 (S.D.N.Y. Jan. 12, 2012). Under Federal Rule of Civil Procedure 45, a court can only compel a non-party witness to attend a proceeding within 100 miles of where the person resides, works, or regularly transacts business in person. Fed. R. Civ. P. 45(b)(2)(A)-(B).

Because the only identifiable non-party witnesses are in New York or New Jersey, all identifiable non-party witnesses are within or near the Southern District of New York. (Faller Dec. ¶¶ 13, 15). This factor supports an exception to the first-to-file rule, favoring this action over the Montana action.

7.    The relative means of the parties favors this action, over the Montana Action.

A party opposing a transfer or dismissal based on financial burden must show the transfer would be unduly burdensome. *See Seltzer v. Omni Hotels*, No. 09-cv-9115 (BSJ) (JCF), 2010 U.S.

Dist. LEXIS 104495, at *5 (S.D.N.Y. Sept. 30, 2010). Plaintiff, an individual, has limited means and would face significant hardship litigating in Montana against an individual employer and its corporate entity. (Faller Dec. ¶ 16). Indeed, this is exactly why Defendants sued Plaintiff in Montana, not New York: to make it difficult for Plaintiff to litigate there. (FAC ¶¶ 34-37). The factor favors this matter over the Montana Action.

8.    The forum's familiarity with the governing law favors this action, over the Montana Action.

A forum's familiarity with governing law is generally given little weight, as federal courts routinely apply out-of-state law. *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 620–21 (S.D.N.Y. 2016). Regardless of venue, New York choice-of-law rules will apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (concluding that the choice of law analysis is governed by the transferor court's choice of law rules, as a change of venue under section 1404(a) should generally be a mere "change of courtrooms" with respect to state law).

Under New York's choice of law rules for tort claims, New York law will apply because it has the greatest interest in regulating behavior within its borders. *See Cooney v. Osgood Machiner, Inc.*, 81 N.Y.2d 66, 72 (1993); *Fiance One Public Co. Ltd. v. Leham Bros. Special Fin., Inc.*, 414 F.3d 325, 336 (2d Cir. 2005). Again, the key facts happened here: Plaintiff worked here; and he was fired here. While a Montana federal court can apply New York law, this Court is no doubt more familiar with applying New York law, thereby favoring this case over the Montana action.

9.    Trial efficiency and the interest of justice favors this action, over the Montana Action.

The interests of justice favor this action over the Montana Action. Again, the harm occurred here, not in Montana. New York is strongly interested in adjudicating employment claims arising

within its borders. *See Warman v. Am. Nat'l Stds. Inst.*, No. 15-cv-5486 (RA), 2016 U.S. Dist. LEXIS 87415 at *1 (S.D.N.Y. Jul. 6, 2016). Montana, by contrast, has minimal connection to this dispute.

Overall, the balance of convenience favors this action over the Montana action.

III.    PLAINTIFF'S CLAIMS ARE NOT COMPULSORY COUNTERCLAIMS TO THE MONTANA ACTION

Not every counterclaim is compulsory. That is especially so, where, like here, an employee is asserting claims that are separate and apart from the contract at issue in the Montana action and asserts other employment claims.

Federal Rule of Civil Procedure 13(a) defines a counterclaim as "compulsory," as opposed to permissive, if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Put another way, a counterclaim is compulsory, "when there is a 'logical relationship' between the counterclaim and the main claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (citation omitted). The Second Circuit has established that the "logical relationship" test is satisfied "[if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) (alteration omitted) (quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)).

The claims here do not arise from the same transactions in the Montana Action. Preliminary, Plaintiff explicitly does not assert any claims under the Consulting Services Agreement. His claims, rather, focus on the compensation due to him after that Agreement expired. By contrast, the Consulting Agreement is the foundation of the Montana Action.

14

Defendants, nonetheless, lump all of Plaintiff's claims together and argue they are compulsory because they involve the "same issues." (Defs. MOL at 5). Distilled, Defendants are arguing the counterclaims are compulsory because they, like the Montana Action, relate to events that occurred during the employment relationship. That is not enough. *See Johnson v. Corporate Express, Inc.*, No. 20-CV-4627 (LDH) (MMH), 2022 U.S. Dist. LEXIS 60826, at *4-*6 (E.D.N.Y. Mar. 31, 2022) (reasoning that an employment relationship alone does not make a counterclaim compulsory. Indeed, courts often hold an employee's counterclaim or employer's counterclaim are not compulsory); *Anthony L&S, LLC v. Doherty*, No. 13-CV-5495 (PAE), 2014 U.S. Dist. LEXIS 2625, at *16 (E.D.N.Y. Jan. 8, 2014) (no compulsory counterclaim where both claims arose from the deterioration of the employment relationship); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) ("The only possible connection between Plaintiffs' overtime claims and the counterclaims is that they arise out of the same employer-employee relationship."); *Johnson*, 2022 U.S. Dist. LEXIS 60826, at *4-6 (employer's counterclaim was not compulsory where it did not implicate the employee's wage and hour claims).

None of the cases Defendants cite call for a different conclusion as the facts are materially different. In those cases, the parties' claims involved the same contract. *Bezuszka v. L.A. Models, Inc.*, No. 04–CV–7703 (NRB), 2006 U.S. Dist. LEXIS 13620 at *67 (S.D.N.Y. Mar. 24, 2006) (dismissing second-filed action on compulsory counterclaim grounds where complaint alleged breach of contract under the same agreement at issue in the first action); *Bonadio v. E. Park Research, Inc.*, 220 F.R.D. 187, 189 (N.D.N.Y. 2003) (dismissing second-filed action on compulsory counterclaim grounds where first-filed action involved "a dispute arising out of the same contract" as the second-filed action); *Adam v. Jacobs*, 950 F. 2d 89, 92 (2d Cir. 1991) (holding that the district court erred by failing to transfer or dismiss the second-filed action, where

the first-filed action sought rescission of a contract that was executed concurrently with, and as a condition of, the contract at issue in the second-filed action). Again, that is not the case here.

Plaintiff Faller was, thus, not required to file his claims as counterclaims in the Montana Action. On top of that, filing his claims in Montana would require him consenting to Montana's jurisdiction, which he does not. He has, rather, moved, under 28 U.S.C. § 1404, to transfer the Montana Action to this Court precisely because he is not subject to that state's jurisdiction.

IV.    THE BREACH OF CONTRACT CLAIM IS WELL PLED.

The FAC handedly establishes that the parties entered into an enforceable contract and that Defendants breached it. This claim is well pled.

The burden to sufficiently plead a breach of contract claim is straightforward and not onerous. "To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Birner v. Kensington Vanguard Holdings, LLC*, No. 24-cv-2743 (LTS)(JW), 2025 U.S. Dist. LEXIS 61611, *6 (S.D.N.Y. Mar. 31, 2025) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). That is all that is needed. As long as the complaint provides the court and the defendants "notice of the transactions [and] occurrences . . . intended to be proved as well as the material elements of each cause of action," a motion to dismiss will be denied. *Digilytic Intl. FZE v. Alchemy Fin., Inc.*, No. 20-cv-4650 (ER), 2022 U.S. Dist. LEXIS 57765, at *18 (S.D.N.Y Mar. 29, 2022). The FAC pleads each of these elements.

First, it establishes the offer. *After* the Consulting Services Agreement expired on June 30, 2023, Defendants offered to employ him as its Chief Investment Officer and pay him $10,000 per month and award him 250 in equity shares. (FAC ¶¶ 16, 63). Second, it establishes that Plaintiff accepted the offer. (FAC ¶¶ 21, 64). Third, it establishes the consideration Defendants offered him:

$10,000 per month and 250 in equity shares. (FAC ¶¶ 16, 20, 63). Fourth, it establishes that Plaintiff performed his CIO duties, including "preparing for meetings with perspective investors, having meetings with those perspective investors, connected Defendant Breezy Point with a grant writing company, and being the point person for attorneys with Breezy Point." (FAC ¶ 65). Finally, the FAC shows that Defendants breached the agreement by not providing Plaintiff the salary or the equity. (FAC ¶¶ 27, 66). This is enough. *See Birner*, 2025 U.S. Dist. LEXIS 61611, *6.

Defendants, for their part, argue no breach occurred because the parties continued to operate under the Consulting Services Agreement. (Def. MOL at 9). Not so. By its own language, the Agreement terminated at the end of June and could be extended only by a "mutual written agreement between [Plaintiff] and [Breezy Point]." (FAC ¶ 12, Exhibit A). But the parties never entered into a written agreement to extend the Consulting Services Agreement. (FAC ¶ 13). The parties' obligations to each other under that Agreement, accordingly, ended on June 30, 2023. (FAC ¶ 14). Defendants therefore had no existing obligation under that Agreement to pay Plaintiff and Plaintiff had no obligation under that Agreement to perform any services for Defendants, making their argument on this contrary to the FAC and the law.  It is, accordingly, immaterial that Defendants orally agreed to pay him the same compensation that it agreed to give him in in the expired Consulting Services Agreement and that Plaintiff was largely performing the same duties under the expired Consulting Services Agreement and the oral agreement. *See Zigler v. Featherstone Foods, Inc.*, No. 20-cv-2462, 2021 U.S. Dist. LEXIS 8547 at *9 (S.D.N.Y. Jan. 15, 2021) (no motion to dismiss breach of contract claim where continued at-will employment, following expiration of fixed term employment contract, was sufficient consideration to form new employment contract). It is also inaccurate to argue nothing changed after the Consulting Services

17

Agreement expired because, under that Agreement, Plaintiff was a consultant but, once an employee, he became Defendants' Chief Investment Officer. (FAC ¶¶ 11, 16).

Defendants are, likewise, misguided to state the FAC is not sufficiently definitive on when the offer was made. The FAC explains it. Defendants made this offer to Plaintiff "[a]fter the Consulting Services Agreement expired" and they "agreed to employ him . . . in or around July 2023." (FAC ¶ 16). To the extent Defendants are arguing Plaintiff must plead the precise date when this offer was made, no authority exists for that and Defendants cite none.

Defendants final effort, relying on the January 3, 2025 settlement communication to argue no oral agreement exists, fails in many ways. Preliminarily, it is improper to use a settlement communication to challenge whether a claim is sufficiently pled. *Treoor Sportswear Co., Inc. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 509-10 (2d Cir. 1989) (settlement negotiations are inadmissible if offered to prove or disprove the validity of a party's claim because of Fed. R. Evid. 408's "public policy of encouraging settlements and avoiding wasteful litigation"); *Arugs Mgmt. Corp. v. Siemens Corp.*, No. 11-cv-1923, 2011 U.S. Dist. LEXIS 108581 at *12-13 (S.D.N.Y. Sept. 23, 2011) (declining to consider a settlement communication when used to support a motion to dismiss). Next, this document does not contradict the agreements between Plaintiff and Defendants since this is not an agreement between the parties; it is a settlement communication from Plaintiff's counsel to a defendant. And Defendants' reliance on *Brown v. N.Y. City Hous. Auth.*, No. 05-cv-10332, 2006 U.S. Dist. LEXIS 30193, at *4 (S.D.N.Y. May 16, 2006) for this issue goes nowhere since, there, the defendant cited an EEOC Charge, not a settlement communication.

Finally, assuming they may rely on this settlement communication for this purpose, it does not say what they claim it says. They argue Plaintiff "admits" in this communication that the parties

continued to operate under the Consulting Services Agreement, no oral agreement existed and no new consideration was offered. (Def. MOL at 11). That is not, however, what the settlement communication says. It, in fact, does not even mention the Consulting Services Agreement. Defendants, wishing that it did, insert a reference to that Agreement when quoting the settlement communication: "He often inquired with you when he would get paid and complained about not getting paid *[under the terms of the Consulting Agreement]*." (Defs. MOL at 10 (emphasis added)). At best, this is a dispute on whether the settlement communication should have been more precise by stating Defendants "contracted" with Plaintiff in June, versus hired him, and by separating out the time periods when he was a consultant and an employee. It does not take away from the FAC's allegations. This claim is well pled and should not be dismissed.

V.    THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS WELL PLED SINCE IT SEEKS DAMAGES SEPARATE FROM THE BREACH OF CONTRACT CLAIM AND RELIES ON DIFFERENT ALLEGATIONS

Plaintiff's breach of the implied covenant of good faith and fair dealing claim relies on different allegations and seeks different damages than the breach of contract claim. It is well pled.

Under New York law, "implicit in every contract is a covenant of good faith and fair dealing...which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citing *New York Univ. v. Cont'l Ins. Co*., 87 N.Y.2d 308, 318, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995)) (internal quotations omitted). An implied covenant of good faith and fair dealing will survive a motion to dismiss if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract. *See Harris v. Provident Life & Accident Ins. Co*., 310 F.3d 73, 80 (2d Cir. 2002) (applying New York law); *Bos. Consulting Grp., Inc. v. NCR Corp.*, No. 19-cv-10156 (LGS), 2020 U.S. Dist.

LEXIS 175812, *15 (S.D.N.Y. Sept. 4, 2020) (holding breach of the implied covenant of good faith and fair dealing claim should be dismissed on a motion to dismiss only if it duplicates the breach of contract claim); *Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11-cv-5476 (LB), 2014 U.S. Dist. LEXIS 202841, at *22 (E.D.N.Y. May 13, 2014) (denying motion to dismiss when the breach of the implied covenant of good faith and fair dealing claim was based on different facts than the breach of contract claim). That is the case here.

To begin with, the claims rely on different allegations. The breach of contract claim focuses on Defendants' failure to pay Plaintiff $10,000 per month and award him his equity. (FAC ¶¶ 20-27, 63-67). The implied covenant of good faith claim focuses, instead, on Defendants' failure to provide Plaintiff with necessary information that investors requested, which were necessary to close transactions. (*Id.* ¶¶ 43-48, 74).

Next, the claims seek different damages. The breach of contract claim seeks the $10,000 monthly salary and the equity. (*Id.* ¶63). The implied covenant of good faith claim, rather, seeks the additional equity that was promised to him if he closed transactions and the promised increased salary. (*Id.* ¶¶ 77).

Defendants' arguments on this claim are misplaced. They argue this claim is not sufficiently definite because it does not identify the specific transactions that Plaintiff had to close to receive this additional consideration. That is not, however, Plaintiff's burden at this notice pleading stage. By referencing "certain transactions," Plaintiff has sufficiently put Defendants on notice of the allegations underlying this claim, which is enough. *Digilytic Intl. FZE*, 2022 U.S. Dist. LEXIS 57765, at *18. What's more, "the doctrine of definiteness should be sparingly used, as a last report, and only when an agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear." *See Keybanc v. Cap Mkts., Inc. v. Extreme*

*Steel, Inc*., 710 F. Supp. 3d 239, 243 (S.D.N.Y. 2024). That is, "[W]here it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain." *See Id*. at 243 (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp*., 78 N.Y.2d 88, (N.Y. 1991)). That applies here. In discovery, those specific transactions will be identified.

Defendants next misinterpret the FAC's allegations in arguing this claim is inconsistent with the agreement between the parties. (Defs. MOL at 14-15). On Plaintiff alleging that Defendant Goldstein told him what to do and how to do it (FAC ¶ 17), that allegation speaks to Defendant Goldstein's supervisory authority over Plaintiff, making him personally liable for the Labor Law claim. That allegation does not speak to the contractual terms between the parties.

They also argue this claim fails to sufficiently plead how their actions damaged Plaintiff. (Def. MOL 15-16). Not so. The FAC explains that, during his meetings with prospective investors, they requested from Plaintiff to see certain Breezy Point documents and explained these "documents are necessary for them to invest in Defendant Breezy Point"; that Plaintiff requested these documents from Defendant Goldstein; that Defendant Goldstein did not provide the requested financial documents; and the prospective investors did not invest because Defendant Goldstein did not provide the requested information. (FAC ¶¶ 44-47). Defendants, despite these allegations, argue Plaintiff has to plead the requested documents would have provided the investors will all of the requested information. (Defs. MOL 15-16). Defendants, in doing so, are not accepting the allegations as true and trying to heighten Plaintiff's pleading burden beyond providing state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This claim is well pled.

VI.    THE RETALIATION'S CLAIM IS WELL PLED.

Both parts of the retaliation claim are straight forward and widely recognized as viable claims under N.Y. Lab. Law § 215: Defendants fired Plaintiff Faller for complaining about not getting paid; then, after advising Defendants of his intent to file a lawsuit against them for the unpaid wages, they filed a meritless lawsuit against him in Montana, again retaliating against him. Defendants' arguments to dismiss this claim depends on ignoring salient allegations and heightening Plaintiff's pleading burden.

A.    Firing Plaintiff For His Repeated Complaints About Not Getting Paid Is A Valid Retaliation Claim Under N.Y. Lab. Law § 215.

A plaintiff, to sufficiently plead a retaliation claim under N.Y. Lab. Law § 215, must allege that "(1) while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law, and (2) he or she was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result. *Castagna v. Luceno*, No. 09-cv-9332 (CS), 2011 U.S. Dist. LEXIS 45567, *41 (S.D.N.Y. April 26, 2011) (involving a motion to dismiss). Informal complaints constitute protected activity under this section. *Robledo v. No. 9 Parfume Leasehold*, No. 12-cv-3579 (ALC)(DF), 2013 U.S. Dist. LEXIS 57383, *25 (S.D.N.Y. April 9, 2013). The FAC meets this test.

First, it pleads Plaintiff "repeatedly complained" to Defendant Goldstein about not being paid his salary "during his employment period." (FAC ¶¶ 23-25, 58). Next, it pleads Defendants fired Plaintiff Faller because of "his complaints about the unpaid wages." (*Id.* ¶ 30). This is enough. *See Castagna*, 2011 U.S. Dist. LEXIS 45567, *41.

Defendants, however, argue Plaintiff must plead the specific dates when he complained about not being paid his wages. Yet they cite no authority to show the allegation of repeated complaints is insufficient at the pleading stage. The lone case they cite for this argument examined

a § 215 claim on summary judgment. (Defs. MOL at 17 citing *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229 (S.D.N.Y. 2013)). And even that case explains no "bright line" exists "to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" and that courts must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Esmilla*, 936 F. Supp. 2d 229, 244  (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Using that judgment and giving the FAC all favorable inferences, the FAC sufficiently pleads a causal relationship exists between Plaintiff "repeatedly complain[ing]" about not getting paid and Defendants firing him.

      B.      Filing A Meritless, Bad Faith Lawsuit In Response to Plaintiff's Complaint About Not Getting Paid Is A Valid Retaliation Claim Under N.Y. Lab. Law § 215.

The Montana Action was filed in bad faith in response Plaintiff Faller indicating his intent to file a lawsuit against Defendants for unpaid wages. That is unlawful.

Baseless or bad faith lawsuits or counterclaims constitute "impermissibly adverse retaliatory actions." *Moonsung Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021) (involving § 215 and FLSA retaliation claims); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (E.D.N.Y. 2008) (same). This is because "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights [have an] *in terrorem* effect." *Torres*, 628 F. Supp. 2d at 473. A plaintiff, to sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, "must allege both that the lawsuit or counterclaim was filed both with a retaliatory motive and that it was filed without a reasonable basis in fact or law." *Moonsung Kim*, 576 F. Supp. 3d 14, 31 (internal quotations omitted). The FAC does so.

Preliminarily, on January 3, 2025, Plaintiff, through counsel, advised Defendants of his intent to sue them for failing to pay him owed wages and for firing him for complaining about those owed wages. (FAC ¶ 34). Two weeks later, Defendant Breezy Point filed the January 17,

2025 lawsuit against Plaintiff in a Montana State Court and did so with the bad faith intent to cause Plaintiff the expense of having to litigate a lawsuit in Montana when he lives in New York. (FAC ¶¶ 35-36). The FAC is specific on why Plaintiff asserts the Montana Action is retaliatory, including Defendant Breezy Point claims jurisdiction exists over Plaintiff under Montana's long arm statute (Montana Action ¶ 3), but fails to allege a single fact showing the statute's requirements are met. (FAC ¶ 40).

Under Montana's long arm statute, personal jurisdiction will exist over a non-resident for relief arising from the following acts:

> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action; [or]
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
> (D) contracting to insure any person, property or risk located within this state at the time of contracting;
> (E) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
> (F) acting as a director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

*Mt. Meadows Pet Prods. v. NT Consulting*, LLC, No. 24-22 (GF), 2024 U.S. Dist. LEXIS 173696, *5 (D. Mont. Sept. 25, 2024) (quoting Mont. R. Civ. P. 4(b)(1)(A-F)). The Montana Action, despite this, does not plead allegations to show the long arm statute applies. It does not allege, in relevant part, that Plaintiff Faller transacted any business in Montana; it does not allege he was contracted for work to be performed in Montana; and it does not allege that any wrongdoing occurred in that state. (Montana Action ¶¶ 1-36, Ex. B to FAC). The absence of these allegations confirms the Montana Action is groundless and in retaliation for the January 3 settlement communication.

Defendants, for their part, do not show how the long arm statute applies. They, rather, cite various allegations in the Montana Action (Defs. MOL at 19-20) but none are relevant to this issue, confirming Defendant Breezy Point had no good faith basis to file the Montana Action.

At bottom, this claim is well pled.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint should be denied in its entirety. To the extent the Court grants any part of the motion, Plaintiff respectfully requests leave to cure the identified deficiencies with a Second Amended Complaint.

Date:   New York, New York
       May 30, 2025

                Respectfully submitted,
                LIPSKY LOWE LLP

                <u>s/ Douglas B. Lipsky</u>
                Douglas B. Lipsky
                420 Lexington Avenue, Suite 1830
                New York, New York 10170
                212.392.4772
                doug@lipskylowe.com
                *Plaintiff's Counsel*