UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOEL FALLER,<br><br>                    Plaintiff,<br><br>          -against-<br><br>BREEZY POINT ENERGY CORP. and ARI<br>GOLDSTEIN, jointly and severally,<br><br>                    Defendants. | 25-CV-1604 (JGLC)<br><br>**<u>ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

The Court received the attached correspondence via email on December 9, 2025. It is

hereby ORDERED that all parties appear for a conference with the Court on December 17, 2025,

at 10:00 a.m. The conference will be held remotely via Microsoft Teams. Counsel will receive

Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-

only line may be accessed by dialing: 646-453-4442 | Access Code: 314 069 626#.

Dated: December 9, 2025
       New York, New York

                              SO ORDERED.

                              *Jessica Clarke*
                              _____

                              JESSICA G. L. CLARKE
                              United States District Judge

**From:** Ari Goldstein
**To:** Clarke NYSD Chambers
**Cc:** Douglas Lipsky
**Subject:** Faller v. Breezy Point Energy Corp. and Ari Goldstein, Case No. 7:25-cv-01604-JGLC
**Date:** Tuesday, December 9, 2025 1:07:02 PM
**Attachments:** 2025.12.04 Order Denying Motion to Transfer Venue.pdf

**CAUTION - EXTERNAL:**

Request for Guidance Regarding Montana Order and Access to Counsel

The Honorable Jessica G.L. Clarke
United States District Court
Southern District of New York

Dear Judge Clarke:

I hope this message finds you well.

I am the pro se defendant in the above-referenced matter, and I am writing respectfully to ask for the Court's guidance on a procedural issue and to inform the Court of my difficulties obtaining legal representation.

Recently, the United States District Court for the District of Montana issued an order in *Breezy Point Energy Corp. v. Noel Faller*, Case No. 6:25-cv-00025-TJC, denying Mr. Faller's motion to transfer that case to the Southern District of New York. I do not understand how, if at all, this federal order in Montana affects the claims, schedule, or any obligations I may have before Your Honor in this case.

I respectfully request the Court's guidance as to whether I should take any specific steps to bring this Montana order formally to the Court's attention (for example, by filing it on the docket), and whether it has any impact on upcoming deadlines or proceedings in this matter.

In addition, I am currently unable to afford private counsel. I have contacted legal aid and pro bono organizations but, to date, I have not received any responses or been able to secure representation. If the Court is aware of any pro se assistance resources, legal clinics, or procedures for requesting the appointment of pro bono counsel for a civil litigant in my circumstances, I would be very grateful for that information.

Thank you very much for your time and consideration. I deeply appreciate the Court's patience and understanding as I do my best to navigate this process on my own.

Wishing you and your family a very happy and healthy holiday season.

Respectfully,
Ari Goldstein



Ari Goldstein
CEO

917-685-7846

ari@breezypointenergy.com

www.breezypointenergy.com

The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by replying to this email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BREEZY POINT ENERGY CORP, | CV 25-25-H-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| NOEL FALLER, | |
| Defendant. | |

Plaintiff Breezy Point Energy Corp ("BPE") initiated this action in Montana state court against Defendant Noel Faller, arising out of a Consulting Services Agreement (the "Agreement") between the parties.  (Doc. 2-1.)  BPE asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.  (*Id*.)

Faller removed the matter to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 2.)  Presently before the Court is Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.  (Doc. 12.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 13, 15, 19.)

Having considered the parties' submissions, the Court finds Defendant's motion should be **DENIED**.

/ / /

/ / /

1

## I.     BACKGROUND

BPE is a renewable energy company organized under the laws of the state of Montana.  (Doc. 15 at 6.)  BPE was created to develop, produce, and market renewable energy, with the goal of operating its business on the Blackfeet Indian Reservation in Montana.  (*Id.* at 2.)

On June 3, 2023, the parties entered into the Agreement, whereby Faller would work as an independent contractor for BPE, "marketing [BPE] to potential buyers of energy credits," and assisting BPE in "obtaining sales of renewable energy credits, taxes, and subsidies."  (Doc. 2-1 at 6.)  At the time the parties entered the Agreement, BPE's offices were located in New Jersey.  (*Id.*)  Faller resides in Westchester County, New York, and worked remotely from a home office there at all relevant times, except for a two-week trip to Montana in May 2024 to promote BPE's business.  (Doc. 14 at 1, 3.)

The Agreement was expressly limited to a term of one month, with any extension of this term "subject to mutual written agreement between [Faller] and [BPE]."  (Doc. 2-1 at 7.)  Faller contends that, following the expiration of the one-month consulting Agreement, he was employed by BPE as its Chief Investment Officer.  (Doc. 14 at 1.)  BPE asserts that while Faller was afforded the title of Chief Investment Officer, he was never actually an employee of BPE.  (Doc. 15-1 at 4.)  According to BPE, the parties "agreed to continue with the independent

contractor consulting relationship for a period of time after the [t]erm [of the Agreement] expired." (Doc. 2-1 at 3.)

Whatever the precise nature of Faller's ongoing employment relationship with BPE, both parties agree that this relationship terminated. (Doc. 14 at 2; Doc. 2-1 at 3.) Faller maintains the termination date was October 2024 (Doc. 14 at 2); BPE does not specify when this relationship ended.

Faller alleges that he was terminated because he complained about unpaid wages. (Doc. 13 at 4.) BPE, on the other hand, alleges that Faller was terminated because he "breached the Agreement by, among other things, disclosing BPE's confidential information to third parties and by using BPE's confidential information for purposes other than performing services under the Agreement … failing to meet reasonable industry standards in performing services under the Agreement … [and] failing to return BPE's intellectual property, confidential information, and/or property." (Doc. 2-1 at 3.)

On January 3, 2025, Faller, through counsel, sent BPE and BPE Chief Executive Officer, Ari Goldstein, a letter demanding unpaid wages. (Doc. 13 at 4.) Two weeks later, on January 17, 2025, BPE filed this action in Montana state court. (Doc. 2-1 at 1.)

Faller then removed this case from Montana state court to this Court on March 10, 2025. (Doc. 2.) Two days later, on March 12, 2025, BPE changed its

3

principal office address with the Montana Secretary of State from North Caldwell, New Jersey, to Kalispell, Montana.  (Doc. 20 at 11.)[1]  Faller filed the instant motion to transfer venue to the Southern District of New York (S.D.N.Y.) on May 2, 2025.[2]  (Doc. 12.)

## II.   DISCUSSION

Faller argues that venue is not proper in Montana, and that this Court should transfer this action to the S.D.N.Y.  (Doc. 13 at 6.)  Faller first argues that Montana courts lack personal jurisdiction over him.  Faller also contends that transferring this case to the S.D.N.Y would serve the convenience of the parties and witnesses.

BPE counters that this Court has personal jurisdiction over Faller.  BPE also argues that venue in Montana is proper, and that it would not be unduly burdensome for Faller to litigate this case in Montana.  (Doc. 15 at 20–21.)

/ / /

---

[1] In an affidavit dated March 4, 2025, Goldstein states that BPE "is located at 1803 3rd Ave, Suite 3, Kalispell, Montana" (Doc. 15-1 at 1) but the change of principal office address with the Montana Secretary of State was not filed until March 12, 2025.

[2] Faller is proceeding before this Court pro se, but states he has been assisted by his New York counsel in preparing filings submitted to this Court.  Filings by pro se litigants are "entitled to special deference," *Cannady v. Frink*, 2014 WL 4388254, at *2 (D. Mont. Sept. 4, 2014) whereby they are "liberally construe[d]," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) and held "to less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  That said, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

The Court will address the issues of personal jurisdiction and venue in turn below.

### A.    Personal Jurisdiction

Although Faller frames his motion as one to transfer venue, he argues that this Court lacks personal jurisdiction over him.  When a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Courts will "draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."  *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), *overruled on other grounds by Walden v. Fiore*, 571 U.S. 277 (2014).  But "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

In determining whether it has personal jurisdiction, courts may consider declarations and other evidence outside the pleadings.  *First Nat'l Bank of Sioux Falls v. Est. of Carlson*, 448 F. Supp. 3d 1091, 1096 (D. Mont. 2020).  When the jurisdictional determination is based on written materials, rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

(9th Cir. 2004). A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.* Further, any "[c]onflicts between parties over statements in affidavits must be resolved in the plaintiff's favor." *Id.*

To exercise personal jurisdiction over a non-resident defendant, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). With respect to the first inquiry, this Court is bound to look to Montana law. *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. Oct. 3, 2006).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (citing *Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)).

6

As to the first requirement, Montana's long-arm statute provides in

relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> …
> (A)   the transaction of any business within Montana;
> …
> (E) entering into a contract for services to be rendered …
> in Montana by such person;

Mont. R. Civ. P. 4(b)(1)(A), (E).

 The first sentence of Rule 4(b)(1) establishes the requirements for general

jurisdiction.  *Cimmaron*, 67 P.3d at 260 (citing *Bi-Lo Foods, Inc. v. Alpine Bank,*

*Clifton*, 955 P.2d 154, 157 (Mont. 1998)).  "A court with general jurisdiction may

hear *any* claim against that defendant, even if all the incidents underlying the claim

occurred in a different state."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582

U.S. 255, 262 (2017) (emphasis in original).

The remainder of Rule 4(b)(1) establishes the requirements for specific

jurisdiction.  *Cimmaron*, 67 P.3d at 260.  In contrast to general jurisdiction,

specific jurisdiction is more limited, and requires the controversy be directly

related to the defendant's contacts with the forum.  *Bristol-Myers*, 582 U.S. at 262.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P.

4(b)(1), it must next determine whether such exercise is commensurate with the

defendant's due process rights under federal law. *Bedrejo v. Triple E Can., Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (citing *Simmons v. Montana*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part due process test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff shows the first two prongs are met, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* An insufficient showing at any prong, requires dismissal. *Id.*

Under the first prong, a defendant cannot "be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v.*

8

*Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and punctuation omitted).

Instead, jurisdiction is proper "where the contacts proximately result from actions

by the defendant *himself*[.]" *Id.* (emphasis in original). The plaintiff "must show

that the defendant deliberately reached out beyond its home—by, for example,

exploiting a market in the forum State or entering a contractual relationship

centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359

(2021) (internal quotation marks and alterations omitted). When a defendant's

efforts are "purposefully directed" toward residents of the forum state, due process

permits the exercise of personal jurisdiction even in the "absence of physical

contacts" there. *Burger King*, 471 U.S. at 476.

Under the second prong, a plaintiff's claim "arises out of" the defendant's

contacts in the forum state, when there is a causal relationship between the

defendant's in-state contacts and the plaintiff's claim. *Ford Motor Co.*, 592 U.S. at

362.

In considering the third prong, courts in the Ninth Circuit use a seven-factor

balancing test to determine whether the exercise of personal jurisdiction comports

with fair play and substantial justice:

> (1) the extent of the defendant's purposeful interjection into the forum
> state's affairs; (2) the burden on the defendant of defending in the
> forum; (3) the extent of conflict with the sovereignty of the
> defendant's state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient

and effective relief; and (7) the existence of an alternative forum.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 761 (9th Cir. 2025) (citation and internal

quotation marks omitted).

### 1.    General Jurisdiction

BPE asserts that the Court has general jurisdiction because Faller's "contacts

with Montana for more than a year [were] continuous[ and] systematic," and

sufficient to essentially render him at home in the state  (Doc. 15 at 13.)

A court has general jurisdiction over an individual when that person's

contacts with the forum are "so substantial, continuous, and systematic that the

defendant can be deemed to be 'present' in that forum for all purposes."  *Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th

Cir. 2006).  In determining jurisdiction over an individual, like Faller, "the

paradigm forum for the exercise of general jurisdiction is the individual's

domicile."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924

(2011).  "A person's domicile is her permanent home, where she resides with the

intention to remain or to which she intends to return."  *Kanter v. Warner-Lambert*

*Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

BPE argues that Faller is subject to general jurisdiction in Montana because

he "has been working for BPE as an independent contractor specifically for the

purpose of pursuing investments and building business relationships for BPE's

Montana projects, including contacting Montana residents such as Representative Ryan Zinke and members of Montana's state government." (Doc. 15 at 13–14.) While these contacts are relevant for determining specific jurisdiction, they fall far short of establishing that Faller is essentially domiciled in the state of Montana. Thus, Faller is not subject to general jurisdiction in Montana.

### 2.    Specific Jurisdiction

As for specific jurisdiction, BPE argues that the entire scope of Faller's employment relationship with BPE related to generating business in the state of Montana, and that Faller regularly communicated with individuals in Montana for this purpose. (*Id.* at 7–8, 14, 23–24.) BPE also points to the Agreement as being a contract to render services in Montana. (*Id.* at 15.) Thus, BPE asserts, specific jurisdiction is established under Mont. R. Civ. P. 4(b)(1)(A), (E).

Faller disputes that this Court has specific jurisdiction over him, arguing that the services he performed under the Agreement were done from New York, not Montana (Doc. 13 at 8), and that most of the people he contacted were outside of Montana (Doc. 19 at 5–6). Thus, he contends, he neither transacted business in Montana, nor entered into a contract to render services in Montana.

In support of his contention that he did not transact business in Montana, Faller characterizes his contacts with the state as mere interstate communications, and cites to *Milky Whey, Inc. v. Diary Partners, LLC*, 342 P.3d 13 (Mont. 2015),

for the proposition that interstate communications alone do not give rise to personal jurisdiction. (Doc. 19 at 6.) But *Milky Whey* pertained to interstate communications made pursuant to a contract to be performed in another state. 342 P.3d at 19 ("Even extensive interstate communications, however, do not give rise to jurisdiction where the contract is to be performed in another state.").

That is not the case here. The contract between BPE and Faller was not to be performed in another state; it was intended to develop and promote BPE's business in Montana. According to the affidavit of BPE's CEO, Ari Goldstein, BPE is located in Montana, and was organized to develop and produce renewable energy in the state. Its goal was to operate on the Blackfeet Indian Reservation in Montana. (Doc. 15-1 at 2.) Goldstein states that BPE contracted with Faller to assist in the development of BPE's venture in Montana, and that he "regularly communicated with BPE's contacts in Montana, such as Montana State officials, Blackfeet Tribal officials, potential investors, and other contacts of BPE." (*Id.* at 3.) Faller also traveled to Montana for a two-week period to promote BPE's business, and he personally met with state and tribal officials and other BPE contacts in Montana during that visit. BPE also attaches various correspondence between Faller and officials in Montana to document those contacts. (Doc. 15-3.)

Faller appears to acknowledge the general purpose of the contract. Although Faller asserts that most of his time was spent contacting people outside of

Montana, he acknowledges that the purpose of those contacts was "to see if they wanted to invest with BPE for projects in Montana." (Doc. 19 at 6.)  He also made contacts with "individuals and companies outside of Montana who were open to relocating to the state." (Doc. 20 at 2.)  Thus, he acknowledges that the purpose of his communications with individuals inside and outside of Montana was to facilitate and promote business for BPE in Montana and to generally foster investments in BPE, a Montana corporation.  (Doc. 19 at 8.)

Thus, the Court finds that Faller transacted business within Montana, such that he falls under Rule 4(b)(1)(A).  Although meeting one prong of Montana's long-arm statute is sufficient to confer jurisdiction under the statute, these same facts establish that Faller entered into a contract for services to be rendered in Montana.  The exercise of personal jurisdiction is, therefore, also appropriate under Rule 4(b)(1)(E).

### 3.    Due Process

As for the question of whether assertion of jurisdiction over Faller comports with constitutional principles of due process, Faller satisfies the first prong of the analysis by having purposefully availed himself of the privilege of doing business in Montana.  "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."

*Boschetto*, 539 F.3d at 1016 (internal quotation marks and citation omitted).  Faller entered into a contract with a Montana corporation that was centered on BPE's business in Montana.  He then worked to promote BPE's business in Montana, including traveling to Montana to meet with state and tribal officials.

Moreover, the contract he entered with BPE provided that the Agreement would be "construed in accordance with the laws of the State of Montana."  (Doc. 2-1 at 11.)  While such a designation of law agreement does not generally constitute a consent to jurisdiction, it has been construed as a factor in evaluating purposeful availment.  *See e.g., Burger King*, 471 U.S. at 482 (finding choice-of-law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."); *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1434 (8th Cir. 1995) (finding that a choice-of-law clause is "an important factor in determining whether the defendant purposely availed itself in the forum state.").

The second due process factor is also satisfied here.  This action arises out of and relates to Faller's agreement to facilitate and promote BPE's business in Montana.  BPE alleges Faller failed to perform services according to the Agreement and allegedly improperly used information acquired in the performance of the Agreement.

/ / /

14

Having satisfied the first two factors, the burden shifts to Faller to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin,* 135 F.4th at 751 (quoting *Burger King*, 471 U.S. at 477). Weighing the factors enumerated above, the Court finds Faller has failed to do so.

Faller's purposeful interjection into Montana's affairs appears to be fairly extensive; he worked for more than a year to generate business in Montana for BPE by contacting prospective investors in BPE's Montana operation as well as businesses potentially interested in relocating to Montana. Additionally, Montana has an interest in adjudicating disputes involving Montana corporations and business activities centered in the state, and resolving this dispute in Montana would be convenient and effective for the plaintiff, BPE.

While New York does provide an alternate forum, there is no suggestion that the maintenance of this action in Montana would conflict with the sovereignty of the state. Faller also contends that "it would be unreasonably expensive for me to have to travel to Montana to defend against these claims." (Doc. 19 at 6.) Nevertheless, he entered a contract to promote business in the state, and at least initially, agreed to the application of Montana law to disputes arising under the Agreement. Thus, it was certainly foreseeable when Faller entered the relationship that he may be required to defend any dispute arising under the Agreement in

15

Montana.

As for the most efficient judicial resolution of a controversy, courts focus on the location of the evidence and witnesses, although advances in communication and transportation technology have reduced the importance of this factor. *Doe v. Deutsche Lufthansa Aktiengesellschaft*, 157 F.4th 1103, 1114 (9th Cir. 2025). Even assuming as true Faller's contention that relevant witnesses and evidence are located in New York and New Jersey, he has not demonstrated that the physical distance would make resolution of this controversy in Montana so inefficient that it would render the exercise of personal jurisdiction over him unfair.

In sum, weighing the applicable reasonableness factors, Faller has not made a compelling case that the exercise of personal jurisdiction over him would be unreasonable. Accordingly, the Court finds that it can exercise specific jurisdiction over Faller.

### B.    Venue

Even if personal jurisdiction in Montana is established, Faller maintains that venue of this action is appropriate in the Southern District of New York. Faller argues that this action could have been brought in the Southern District, and that the interests of justice and convenience of the parties favor a transfer there.

BPE argues that a forum selection clause in the parties' Agreement provides for venue in Montana. BPE further maintains that New York would not be a more

16

convenient forum.

### 1.    Forum Selection Clause

BPE argues that under the Agreement between the parties, Faller "expressly agreed to an express forum selection clause which identifies Montana as the proper jurisdiction and governing law for disputes[.]"  (Doc. 15 at 14.)

Faller counters that the Agreement only covers one month of the parties' relationship and is not pertinent to the time period at issue here.  (Doc. 13 at 8.) But even if the Agreement controls, Faller argues that it only addresses the choice of law to be applied, not the proper venue.  (*Id.* at 11.)

"In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).  Federal courts evaluating these clauses are guided by "general principles for interpreting contracts."  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)).  One of these principles is that "[w]hen contract language is unambiguous, [courts] must interpret the language as written, without reference to extrinsic evidence."  *McLane & McLane v. Prudential Ins. Co. of Am.*, 735 F.2d 1194, 1195 (9th Cir. 1984).

In general, contracting parties use three interrelated types of clauses concerning venue, jurisdiction, and governing law: "(1) choice of law clauses, (2)

17

consent to jurisdiction clauses, and (3) forum selection clauses. A forum selection clause designates the venue, a consent to jurisdiction clause waives personal jurisdiction and venue, and a choice of law clause designates the law to be applied." 77 Am. Jur. 2d *Venue* § 10 (2025). While similar, "there is a difference between a clause that designates governing law, and one that designates a forum for disputes. And … one does not always accompany the other." *Vision Quest Indus. Inc. v. Synod*, 2008 WL 11424183, at *2 (C.D. Cal. Feb. 11, 2008). Forum-selection clauses are "separate and distinct from choice of law provisions." *Marcotte v. Micros Sys., Inc.*, 2014 WL 4477349, at *8 (N.D. Cal. Sept. 11, 2014) (quoting *Besag v. Custom Decorators, Inc.*, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009)).

A forum-selection clause can be either mandatory or permissive. 77 Am. Jur. 2d *Venue* § 10. A mandatory clause requires "a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive[.]" *Id.* "To be a mandatory forum selection clause, the clause must contain language that clearly designates a forum as the exclusive one." *Multimin USA, Inc. v. Walco Int'l, Inc.*, 2006 WL 1046964, at *4 (E.D. Cal. Apr. 11, 2006).

A permissive forum-selection clause, on the other hand, is "nothing more than a consent to jurisdiction and venue in the named forum and do[es] not exclude

18

jurisdiction or venue in any other forum." 77 Am. Jur. 2d *Venue* § 10. "If the forum selection clause's language is non-mandatory, the forum selection clause will not preclude suit elsewhere." *Multimin*, 2006 WL 1046964, at *4. *See also Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78–79 (9th Cir. 1987) (summarizing cases where forum-selection clauses were found to be "exclusive and mandatory" based on language designating certain courts as "the only ones which have jurisdiction.").

The purported forum-selection clause, Clause 15 of the Agreement (Doc. 2-1 at 11), reads, in full:

> GOVERNING LAW AND JURISDICTION. This Agreement and all related documents, including all exhibits attached hereto and all matters arising out of or relating to this Agreement and the Services provided hereunder, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of the State of Montana, without giving effect to any conflict of laws principles that would cause the laws of any other jurisdiction to apply.

Despite BPE's contention that this constitutes an "express forum selection clause," (Doc. 15 at 14), the word "venue" is notably absent, as is any other language that would indicate where disputes are to be litigated. *Contra, e.g., Pelleport Invs., Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275 (9th Cir. 1984) ("this Agreement shall be litigated only in the Superior Court for Los Angeles, California (and in no other)"); *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F. Supp. 71, 72 (S.D.N.Y. 1978) ("all disputes arising hereunder

… shall be brought in either San Diego or Los Angeles County.").  Although the word "jurisdiction" is in Clause 15's heading, the clause itself discusses only choice of law and makes no mention of waiver of personal jurisdiction or venue. Clause 15 is clearly not a mandatory forum-selection clause because it is devoid of language requiring litigation be brought in a specific court.  Further, even if this Court were to construe Clause 15 as a permissive forum-selection clause, doing so would neither require that this action remain in Montana nor preclude transfer elsewhere.

Therefore, since the parties did not agree to a mandatory forum-selection clause, the determination of Faller's motion to transfer will be governed by the convenience and fairness factors discussed below.

### 2.    Legal Standards

Venue is generally governed by 28 U.S.C. § 1391, which provides for venue alternatives based on the residence of the defendants or the location of relevant events or property.  When a case is removed from state to federal court, however, 28 U.S.C. § 1441 controls, and venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a); *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665–66 (1953).  Upon proper removal, the federal district court can determine all claims in the removed state action regardless of whether the state court initially had

jurisdiction over the claims.  28 U.S.C. § 1441(f).  Thus, "[a] district court acquires

venue through [a] defendant['s] voluntary removal to federal court, regardless of

whether venue would have been proper had the case originally been filed in that

court.  *Yageo Am. Corp. v. Tseng,* 2006 WL 8454994, at *1 (W.D. Wash. Apr. 21,

2006).

Therefore, upon removal of this action from Montana state court, venue is

properly in this Court.  Nevertheless, even after removal, a party can seek transfer

of venue based on 28 U.S.C. § 1404, which states:

> For the convenience of parties and witnesses, in the interest of justice,
> a district court may transfer any civil action to any other district or
> division where it might have been brought.

28 U.S.C. § 1404(a).

Whether to transfer a case under § 1404 is within a court's discretion, and

the decision whether to do so must be based on an "individualized, case-by-case

consideration of convenience and fairness."  *Jones*, 211 F.3d at 498 (citation

omitted).  The moving party bears the burden to establish why the forum should be

changed.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th

Cir. 1979).  When a transfer "would only shift the inconvenience from defendant to

plaintiff, the motion to transfer should be denied."  *Anderson v. Thompson*, 634 F.

Supp. 1201, 1204 (D. Mont. 1986).  "[A] transfer is not available to a forum which

is equally convenient or inconvenient to the original forum."  *Id.*

21

There is no uniform list of factors that courts must weigh to determine whether transfer is appropriate in a particular case. *Id.* Factors that are frequently considered include:

1. the plaintiff's choice of forum,
2. the location where the relevant agreements were negotiated and executed,
3. the convenience of witnesses,
4. the ability of the two forums to compel non-party witnesses to testify,
5. the respective parties' relative contacts with the forums,
6. the state that is most familiar with the governing law,
7. the relative congestion in the two forums,
8. the length of time action has already been pending in the transferor forum,
9. ease of access to sources of proof, and
10. whether there is a 'local interest' in either of the forums.

*Hillerich & Bradsby Co. v. Ace Am. Ins. Co.*, 2012 WL 2359488, at *1 (D. Mont. June 20, 2012); *Jones*, 211 F.3d at 498–99.

### a.    Whether Venue Would Have Been Proper in S.D.N.Y.

As provided in 28 U.S.C. § 1404, transfer can be made under the statute only to a district where it might have been brought originally. Here, Westchester County, where Faller is domiciled, is within the S.D.N.Y., and Faller is the only defendant in this case. Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in a judicial district in which any defendant resides ...." Accordingly, the S.D.N.Y. is a district where this action may have originally been brought, and this Court may transfer this action there.

Therefore, consideration of the foregoing fairness and convenience factors is necessary.

### b.    Consideration of the Fairness and Convenience Factors

### i.    Plaintiffs' Choice of Forum

Ordinarily, "a plaintiff's choice of forum should rarely be disturbed" *Anderson*, 634 F. Supp. at 1204, and "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The plaintiff's choice is given less deference, however, when the plaintiff is not a resident or citizen of the forum state, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981), "especially when the plaintiff did not reside in the district when the alleged underlying conduct occurred." *Yearby v. Am. Nat'l Ins. Co.*, 2021 WL 3855833, at *3 (N.D. Cal. Aug. 30, 2021). In addition, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Moreover, some courts have recognized that "[a] plaintiff's choice of forum is given less weight when the case has been removed from the state court." *Hallenberg v. Walker*, 2025 WL 1330129, at *6–7 (E.D. Cal. May 7, 2025).

/ / /

23

The residency of corporations for purposes of venue is governed by 28 U.S.C. § 1391(c)(2), which provides that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside … if a plaintiff, only in the judicial district in which it maintains its principal place of business."  A corporation's principal place of business is "the place where [the] corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp v. Friend*, 559 U.S. 77, 92–93 (2010).  It is "a single place" within a state, rather than a state itself.  *Id.* at 93.

BPE selected Montana state court as its choice of forum.  Removal to this Court has already disturbed BPE's choice to some extent.  Additionally, notwithstanding BPE's relocation of its principal place of business from New Jersey to Montana, at the time the facts underlying BPE's allegations occurred, when this action was filed in state court, and when this case was removed, BPE's principal place of business was in New Jersey, making it, as a plaintiff corporation, a resident of New Jersey.

On the other hand, at least some of the operative facts relating to Faller's employment relationship with BPE occurred in Montana.  Both parties appear to agree, at a minimum, that the Agreement entered by the parties was centered on BPE's business in Montana, that Faller performed services on behalf of BPE's enterprise for over a year, and that Faller spent two weeks in the state promoting

24

BPE's business.

Accordingly, the Court finds this factor is neutral.

### ii. Location Where Relevant Agreements Were Negotiated and Executed

Advances in technology and electronic discovery render this factor much less important than others. Transporting documents no longer creates the large burden it once did. *David v. Alphin*, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007). This is especially true here, where the relevant documents were sent electronically.

Faller contends that the offer to enter the Agreement was made by BPE from its offices in New Jersey and signed by Faller from his home office in New York. (Doc. 14 at 1.) He also states that the alleged offer to make him Chief Investment Officer was likewise made by BPE from its office in New Jersey and accepted from his office in New York. (*Id.* at 2.) Aside from the two-week trip, all of Faller's communications with BPE and with potential BPE clients were conducted either from New York or at BPE's offices in New Jersey. (*Id.* at 1–3.) The Agreement lists BPE's offices as being located in New Jersey (Doc. 2-1 at 6), and BPE does not allege that the Agreement was negotiated or executed in Montana. Nor does BPE allege that any other relevant agreements were negotiated or executed in Montana.

/ / /

25

Accordingly, while not afforded substantial weight, this factor favors transfer.

### iii.    Convenience of Witnesses

"A Court should not transfer venue when the transfer would merely shift the inconvenience from the defendant to the plaintiff." *Hillerich & Bradsby Co.*, 2012 WL 2359488, at *2.  "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D. Tex. 1994)).  In particular, courts consider the inconvenience to non-party witnesses. *Saleh*, 361 F. Supp. 2d at 1160; *accord Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) ("courts generally give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur.").

Faller contends that "[n]o witnesses are in Montana."  (Doc. 13 at 16.) Instead, he claims that "[t]he majority of individuals with knowledge of Breezy Point's inner workings are located in New York or New Jersey," and that "the majority of non-party witnesses in this case" live in New York and New Jersey. (Doc. 14 at 3.)  Faller lists three individuals specifically, one of which, Abbie

Mandell, is—or was as recently as March 12, 2025 (*see* Doc. 20 at 11)—an employee of BPE. Faller's reference to "Breezy Point's inner workings" (Doc. 14 at 3) also suggests that the witnesses he has in mind may be BPE employees.

For its part, BPE points to conversations that Faller had with individuals in Montana during his employment relationship with BPE (*see* Doc. 15-3), yet nowhere does BPE state that it would call these individuals as witnesses in this action. Nor does BPE contest Faller's assertion that most—if not all—witnesses reside in either New York or New Jersey. The only assertion BPE makes relating to witnesses is that "[e]xpenses such as … hotel rooms, are often significantly cheaper in Montana than in New York." (Doc. 15 at 22.)

Based on what the parties have alleged in their briefings, witnesses would have to travel significant distances if this action remains in Montana, whereas the S.D.N.Y. would be a more convenient venue for witnesses in New York and nearby New Jersey. Accordingly, the Court finds this factor favors transfer.

### iv.    Ability of Forum to Compel Non-Party Witnesses to Testify

"The availability of witnesses is obviously an important factor to be considered in determining the propriety of a discretionary transfer." *Anderson*, 634 F. Supp. at 1206. Per Federal Rule of Civil Procedure 45(b)(2)(A)–(B), courts may subpoena witnesses for trial within their district and within 100 miles of their district. Generally, the "moving party's inability to utilize compulsory process to

27

compel the attendance of unwilling witnesses is a factor which weighs in favor of transfer." *Anderson*, 634 F. Supp. at 1206. But the "mere fact a party wishes to call witnesses who reside in a transferee district is not sufficient to warrant transfer, unless the party makes a sufficient showing that the witnesses will not attend, or will be severely inconvenienced if litigation proceeds in the transferor forum." *Id.* at 1207. Courts also consider whether testimony by deposition would be adequate, and in doing so, must assess the nature and materiality of the testimony of unwilling witnesses. *Id.* at 1206. Although a description of the witnesses' anticipated testimony "is not an indispensable requirement to the granting of a transfer, the lack of specificity is an important consideration in assessing the weight to be accorded the defendant's claim of unavailability." *Id.*

All but the southern quarter of the state of New Jersey falls within 100 miles of the courthouse of the S.D.N.Y., White Plains Division, to which this action would be transferred. As noted above, Faller argues that all non-party witnesses are located in New York and New Jersey and thus "far outside of this Court's subpoena range." (Doc. 13 at 17.) BPE, on the other hand, does not specifically identify any non-party witnesses and thus makes no contentions about the ability of this Court, nor for that matter of the S.D.N.Y., to compel the testimony of non-party witnesses.

/ / /

Nevertheless, while Faller has identified three non-party witnesses by name—four, counting Goldstein (*Id.* at 16)—he has not indicated who they are in relation to this action, nor what their expected testimony would be. Therefore, the Court has no information upon which to assess the necessity and materiality of their testimony, or to find that testimony by deposition would not be adequate.

Accordingly, the Court finds this factor is neutral.

### v.     Parties' Relative Contacts with the Forums

Turning first to the parties' contacts with the S.D.N.Y., Faller's contacts with that forum, as noted, are extensive. But BPE's only known contacts with the S.D.N.Y., to the extent they exist at all, relate only to the contractual or employment relationship it had with Faller. Thus, transferring this action would merely shift the inconvenience from Faller to BPE, which is an impermissible basis for transfer. *Anderson*, 634 F. Supp. at 1204.

As for the parties' contacts with Montana, Faller maintains that, other than the two-week trip he made to the state, he has had no contact with Montana. He argues that "[a]t all relevant times, [his] employment with [BPE] was formed, performed, and terminated in New York." (Doc. 14 at 3.) He did, however, enter into a contract that was centered on promoting a business in Montana. He concedes that BPE hired him to "call and email people around the country to see if they wanted to invest with [BPE] for projects in Montana" (Doc. 19 at 6), and also

29

acknowledges contacting companies outside Montana that were open to relocating to the state. (Doc. 20 at 2.) He also had contact with multiple state and tribal officials in the state to further BPE's business.

For its part, BPE's contacts with Montana are extensive, as it was formed under Montana law, does business in Montana, and, as of March 2025, has offices in Montana. Faller disputes this, claiming that BPE's "only connection with Montana is that it is incorporated under Montana law" (Doc. 13 at 6), and that "[n]either party to this lawsuit possesses sufficient contacts with District of Montana to justify litigating the lawsuit here." (*Id.* at 17.) But there is little question that BPE's corporate residence is currently in Montana, it is "at home" in the state, and would be subject to general jurisdiction here.

In sum, both BPE and Faller are subject to personal jurisdiction in this Court. BPE has substantially fewer contacts with the potential transferee forum of the S.D.N.Y. than Faller has with the potential transferor forum of Montana. Accordingly, this factor weighs against transfer.

### vi. State that is Most Familiar with Governing Law

Faller argues that because this case was removed to this Court based on diversity jurisdiction, the Court would apply Montana choice-of-law provisions, which call for a "most significant relationship test," whereby this Court would end up applying New York law. (*Id.* at 18–20.)

While BPE's claims for breach of contract and of the implied covenant of good faith and fair dealing do not specifically state that they are brought under Montana law, Count III of BPE's complaint is explicitly brought pursuant to Montana's Uniform Declaratory Judgments Act.  (Doc. 2-1.)

Additionally, although the parties dispute whether the Agreement was in effect at the time the alleged misconduct occurred, BPE is clear that its claims are based on the Agreement.  (*Id.*)  As explained above, the Agreement contains a choice of law provision identifying Montana law as the law the parties will apply to disputes under the Agreement.  At this point, Faller has not established that the Agreement was definitively not in effect at the time BPE's claims arose.  Therefore, at this juncture in the litigation, the Court declines to resolve whether Montana or New York law will ultimately apply.  Yet, given that one of BPE's claims is explicitly premised on Montana law, and since BPE bases all its claims on the Agreement which calls for the application of Montana law, there is a fair probability that Montana law will ultimately apply.  Accordingly, this factor weighs against a transfer.

### vii.    Relative Congestion of the Forums

Courts may consider the statistics compiled by the Administrative Office of the United States Courts to assess the relative docket congestion between the transferee forum and the transferor forum.  *RD Rod, LLC v. Mont. Classic Cars,*

31

*LLC*, 2012 WL 6632185, at \*16–17 (D. Mont. Dec. 19, 2012); *Hillerich &*

*Bradsby Co.*, 2012 WL 2359488, at \*3.  For the 12-month period ending in June

2025, the weighted filings per judge in the District of Montana was 465 cases, and

in the S.D.N.Y. it was 486 cases.  *See* Administrative Office of the United States

Courts, *U.S. District Courts-Combined Civil and Criminal Federal Court*

*Management Statistics* (June 30, 2025) (available at https://www.uscourts.gov/

sites/default/files/document/fcms_na_distprofile0603.20.25.pdf).  This factor,

therefore, is neutral.

### viii.   Length of Time Action Has Been Pending in Transferor Forum

A party's diligence in seeking to transfer venue is a factor courts should take

into consideration.  *Anderson*, 634 F. Supp. at 1208.  Here, Faller filed his motion

to transfer less than two months after removing this case from state court.  Further,

this action is still in its preliminary stages, and a scheduling order has not yet been

issued.  Thus, this factor does not weigh against transfer.

### ix.   Ease of Access to Sources of Proof

Due to "technological advances in document storage and retrieval,

transporting documents does not generally create a burden." *Van Slyke v. Cap.*

*One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007).  Thus, courts have

recognized that this factor has a diminished importance, except in cases where

there is immovable evidence located in the transferee forum.  *Hillerich & Bradsby*

*Co.*, 2012 WL 2359488, at *4; *Grady v. Centurylink Commc'ns*, 2015 WL

7566677, at *2 (D. Mont. Nov. 24, 2015). It does not appear there is any

immovable evidence at issue in this case. Therefore, the Court considers this

factor neutral.

### x.    Local Interest

Faller argues that New York has a greater interest in this dispute because he

performed his employment duties from New York and therefore New York labor

laws protect him. (Doc. 13 at 22.) Even taking Faller's contentions as true,

Montana also has a local interest in this dispute. The case concerns a company that

is located in Montana, organized under Montana law, and has its business activities

centered in Montana. As such, this factor does not weigh in favor of the motion to

transfer.

### xi.    Balancing the Factors

Based on the totality of the factors discussed above, the Court finds they

weigh against transferring the action to S.D.N.Y. While some factors weigh in

favor of transfer, the majority are either neutral or weigh against transfer.

Therefore, the Court concludes Faller has not made the strong showing necessary

to establish that transfer of venue is appropriate under 28 U.S.C. § 1404.

/ / /

/ / /

## III.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's

Motion to Transfer Venue (Doc. 12) is **DENIED**.

DATED this 4th day of December, 2025.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge