UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL FALLER,

Plaintiff,

-against-

BREEZY POINT ENERGY CORP. and ARI GOLDSTEIN, jointly and severally,

Defendants.

25-CV-1604 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

This action is an employment dispute. Plaintiff Noel Faller worked for Defendants Breezy Point Energy Corp. and its owner Ari Goldstein for a little more than one year, from June 2023 until October 2024. Faller was initially hired pursuant to a written consulting contract, which expired after one month, and, according to Faller, was then retained pursuant to an oral agreement. Faller asserts that, after two months of employment, Defendants stopped paying him. He repeatedly complained that he was not being paid, and eventually, Defendants fired him.

When Faller's attorney sent Defendants a letter attempting to recoup some of his wages—and threatening a lawsuit—Defendants promptly filed their own suit in Montana. That case has since been dismissed. Meanwhile, Faller brought the instant action, asserting claims for unpaid salary and retaliation under New York Labor Law as well as claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants have moved to dismiss, arguing that the Montana action renders this suit impermissible and that Plaintiff has failed to state any legal claims. Because the Montana action is now dismissed and Faller has sufficiently alleged some of his claims, the Court denies Defendants' motion in part and grants it in part.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the Amended Complaint ("AC") and its attached exhibits, ECF No. 11, and are presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). "The Court also considers 'documents incorporated in the complaint by reference[] and matters of which judicial notice may be taken.'" *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 243 (S.D.N.Y. 2025) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

Plaintiff Noel Faller ("Plaintiff" or "Faller") brings this action against Defendants Breezy Point Energy Corp. ("Breezy Point") and Ari Goldstein ("Goldstein") (collectively, "Defendants"), asserting claims for unpaid salary and retaliation under New York Labor Law as well as claims for breach of contract and breach of the implied covenant of good faith and fair dealing. ¶ 4. Goldstein is the owner and Chief Executive Officer of Breezy Point, a renewable energy company organized under the laws of Montana. ¶¶ 1–2, 9. Faller was its employee. ¶ 3.

On June 3, 2023, Plaintiff and Defendants entered into a written agreement under which Plaintiff agreed to provide Defendants with investment consulting services. ¶ 11; ECF No. 11-1 (the "Consulting Agreement"). By its own terms, the Consulting Agreement terminated after one month, and "any extension of the Term [was] subject to a mutual written agreement between [Faller] and [Breezy Point]." ¶ 12; Consulting Agreement at 2. Faller and Defendants never entered into a written agreement extending the term of the Consulting Agreement. ¶ 13.

After the Consulting Agreement expired in or around July 2023, Defendants agreed to hire Faller and give him the title of Chief Investment Officer ("CIO"). ¶ 16. In exchange for Faller's work, Defendants agreed to pay Faller $10,000 per month and give him 250 equity

shares in Breezy Point (the "Oral Agreement"). ¶ 20. At the time, Defendants represented to Faller that the company was worth $100 million dollars. *Id.* Faller performed his CIO duties by "preparing for meetings with [pro]spective investors, having meetings with those [pro]spective investors, connect[ing] Defendant Breezy Point with a grant writing company, and being the point person for attorneys with Breezy Point." ¶ 65.

During the first two months of Faller's employment, Defendants paid him only part of his monthly salary. ¶ 23. After those first two months, however, Defendants did not pay Faller any of his $10,000 monthly salary. ¶ 24. Faller complained to Goldstein repeatedly about not being paid. ¶ 25. In response, Goldstein promised that he would give Faller 1,500 additional equity shares and would increase Faller's monthly salary to $25,000: "When deals are closed," Goldstein said, "you will be raised up to c suite level compensation" of $250,000 to $350,000 per year. ¶ 26. Faller held numerous meetings with potential investors to close such deals, but Goldstein did not provide Faller with the financial documentation those investors requested. ¶¶ 43–48. As a result, Faller asserts, the prospective investors never invested in Breezy Point—and Faller never got his raise. ¶¶ 47–48. Indeed, Defendants never resumed paying Faller at all. ¶ 27. All the while, Goldstein paid himself approximately $140,000 over a two-month period. ¶ 28.

In October 2024, Defendants fired Faller. ¶ 29. They claimed that they fired Faller for his lack of communication. ¶ 32. However, Faller and Goldstein "spoke, emailed, and texted at least three times a day," every day of the week. *Id.* Faller alleges that he was fired, in part, because he complained about not being paid. ¶ 30.

Early the following year, on January 3, 2025, Faller's counsel sent Defendants a letter. ¶ 34; ECF No. 12-3 (the "January 3 Letter"). "This firm represents your former employee, Noel

Faller," Faller's counsel explained. January 3 Letter at 1. "This letter is an attempt to confidentially resolve his claims before we file a lawsuit." *Id.* Faller's attorney then discussed the merits of Faller's prospective case and concluded: "Please contact me by January 9 if you want to discuss a resolution of these claims. As this letter is for settlement purposes, it is not admissible for any reason or purpose." *Id.* at 2 (emphasis removed). Defendants did not respond to the letter. ¶ 35.

Two weeks later, on January 17, 2025, Breezy Point filed a lawsuit against Faller in Montana state court (the "Montana Action"), asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking a declaratory judgment. ¶ 36; ECF No. 11-2. Faller then removed the case to the United States District Court for the District of Montana on March 10, 2025. *Breezy Point v. Faller*, No. 6:25-CV-25 (TJC), (D. Mont. Mar. 10, 2025) (the "Montana Action"), ECF No. 2. "Two days later, on March 12, 2025, [Breezy Point] changed its principal office address with the Montana Secretary of State from North Caldwell, New Jersey, to Kalispell, Montana." Montana Action, ECF No. 25 ("Montana Transfer Order") at 3–4. Then, on May 2, 2025, Faller filed a motion to transfer the Montana case to this District. Montana Action, ECF No. 12. On December 4, 2025, the Montana court denied Faller's motion. *See* Montana Transfer Order. Faller appealed the decision to the Ninth Circuit Court of Appeals, which dismissed the appeal. Montana Action, ECF Nos. 37, 43.

The day after the Montana district court denied Faller's motion to transfer, on December 5, 2025, Breezy Point's counsel moved to withdraw from the case. *See* Montana Action, ECF No. 35. Their request was granted. *Id.* Because "[a] corporation is not permitted to appear pro se," the Montana court gave Breezy Point three weeks to retain new counsel and enter an appearance. *Id.* On February 9, 2026, twenty days after their deadline, Breezy Point had not yet retained new

counsel. *See* Montana Action, ECF No. 44. Accordingly, the Montana court directed Breezy Point to "appear in writing on or before March 9, 2026, to show cause . . . why [the] case should not be dismissed with prejudice" pursuant to Federal Rule of Civil Procedure 41(b), which "provides for dismissal with prejudice if a plaintiff fails to prosecute or comply with a court order." *Id.* Breezy Point never responded. *See* Montana Action. Therefore, on March 23, 2026, the Montana district court dismissed the Montana Action with prejudice: "At this juncture," the court wrote, it "can envision no further alternatives to dismissal." Montana Action, ECF No. 46 at 3.

Meanwhile, the parties' dispute continued in this District. On April 22, 2025, Defendants moved to dismiss Plaintiff's Complaint. ECF No. 9. On May 1, 2025, Plaintiff filed an Amended Complaint. AC. On May 16, 2025, Defendants filed a renewed motion to dismiss. ECF No. 12; *see* ECF No. 12-1 ("MTD"). Plaintiff opposed the motion on May 30, 2025. ECF No. 13 ("Opp."). And on June 9, 2025, Defendants replied. ECF No. 16 ("Reply").

Nine days later, on June 18, 2025, the Court held an initial pretrial conference where it directed the parties to file a status update within one week of any decision by the Montana district court on the transfer issue. ECF No. 21. The Court stayed all discovery until that update was filed. *Id.* The Court also referred the parties to the Court-annexed Mediation Program. ECF No. 22.

However, days later, Defendants' counsel filed a motion to withdraw from the case. ECF No. 23. On July 9, 2026, Defendants' counsel elaborated on their request: they had "moved to withdraw as counsel for the Defendants due to the Defendants['] inability to pay their legal fees." ECF No. 24. "Since such time," Defendants' then-counsel continued, "the relationship between this Firm and the Defendants has significantly deteriorated, for reasons unrelated to the payment

of legal fees, resulting in a conflict that is preventing this Firm from representing the Defendants—even for the Court[-]ordered mediation." *Id.* The Court granted counsel's motion to withdraw on July 10, 2026, and stayed mediation. ECF No. 26.

The Court also gave Defendants sixty days—until September 14, 2025—to obtain new counsel and file a notice of appearance. *Id.* The Court warned that should Breezy Point fail to obtain new counsel, "default judgment may be entered against it." *Id.* (citing *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006)). When Breezy Point failed to obtain new counsel or have said counsel enter a notice of appearance in this matter, the Court directed Plaintiff to file a motion for default judgment with respect to Breezy Point. ECF No. 27. On September 25, 2025, however, Defendant Goldstein emailed the Court to request an extension of time to retain counsel, and Plaintiff consented to the request. *See* ECF No. 31. The Court granted the extension and adjourned Plaintiff's deadline to file a motion for default judgment *sine die*. *Id.*

On November 4, 2025, six days before Defendants' extended deadline, Goldstein again emailed the Court to request an extension, citing health issues and financial challenges. ECF No. 33. The Court informed Goldstein about the City Bar Justice Center's Pro Se Law Clinic and again extended Defendants' deadline to retain new counsel and file a notice of appearance until December 8, 2025. *Id.* On December 9, the Court received another email from Defendant Goldstein. ECF No. 35. This note informed the Court that Faller's motion to transfer the Montana Action to this District had been denied and explained that Goldstein was still struggling to find legal representation. *Id.* In response, the Court set a case management conference for December 17, 2025. *Id.*

On December 17, 2025, the Court held a case management conference with Plaintiff's counsel and with Defendant Goldstein. ECF No. 36. Following that conference, the Court

referred the case to Magistrate Judge McCarthy for a settlement conference and stayed the case to "allow the parties to focus on settlement." ECF Nos. 36–37. Judge McCarthy scheduled a settlement conference for January 28, 2026. ECF No. 38. Recognizing that this settlement conference was "intended to universally resolve the parties' disputes—potentially including the matter pending" before it—the Montana district court withheld scheduling its initial pretrial conference. Montana Action, ECF No. 36 at 4–5.

However, the day prior to the settlement conference, Plaintiff's counsel filed a letter addressed to Judge McCarthy explaining that Goldstein had recently "emailed Your Honor's Chambers stating that neither the corporate defendant nor he has any money." ECF No. 40. "[G]iven this development," Plaintiff's counsel continued, Faller "does not see the benefit of a settlement conference and . . . would, rather, obtain a default judgment against the corporate defendant and the individual defendant, when he stops defending against the case, and then collect on the judgment if and when Defendant Goldstein's circumstances change." *Id.* Judge McCarthy canceled the settlement conference. ECF No. 41. This Court then ordered the parties to appear for another case management conference, which it held on February 25, 2025.

At that conference, both parties communicated that they no longer wished to be referred for settlement, so the Court explained that it would rule on the fully briefed motion to dismiss. On April 10, 2026, the Court unstayed the case. ECF No. 42. It now rules on the pending motion to dismiss.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

This discussion proceeds in three parts. First, the Court explains that it will consider the Montana Action and the January 3 Letter in its analysis. Second, the Court evaluates Defendants' argument that this case should be dismissed pursuant to the first-filed rule. The Court concludes that, because the Montana Action is now closed, the first-filed rule does not apply. Third, the Court evaluates Plaintiff's claims. It concludes that Plaintiff has stated a claim for breach of contract but has not stated a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff's retaliation claim, meanwhile, survives as it relates to Plaintiff's complaints about unpaid wages and firing, but is dismissed as it relates to the Montana Action.

**I. The Court Considers the Montana Action and the January 3 Letter**

"In adjudicating a Rule 12(b)(6) motion, a district court 'confines its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Schubert v.*

*City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 107 (S.D.N.Y. 2009)). Because the January 3 Letter is referenced directly in the Amended Complaint, the Court considers it as part of its analysis below. *See* AC ¶¶ 34–35. Relatedly, the Court takes judicial notice of the Montana Action and the public filings in that case. *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (citing *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011)) ("Courts may take judicial notice of public documents or matters of public record.").

## II. The First-Filed Rule Does Not Apply

"Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, 'the first suit should have priority,' and the later-filed suit should be dismissed." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751 (PAE), 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)); *see also Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009). "The rule exists to foster judicial economy by avoiding duplicative litigation, and also to protect parties from having to litigate the same issue in multiple venues." *Cuebiq Grp., LLC v. PaeDae, Inc.*, No. 24-CV-7542 (JGLC), 2025 WL 2419711, at *3–4 (S.D.N.Y. Aug. 21, 2025) (first citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); and then citing *Byron v. Genovese Drug Stores, Inc.*, No. 10-CV-03313 (JBW), 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011)). "Because parties 'should be free from the vexation of concurrent litigation over the same subject matter, there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit.'" *Santana v. Cavalry Portfolio Srvs., LLC*, No. 19-CV-3773 (PAE), 2019 WL 6173672, at *2 (S.D.N.Y. Nov. 19, 2019) (quoting *Serta, Inc.*, 2012 WL 844284, at *3)).

"For the rule to apply, the claims, parties, and available relief must not significantly differ between the actions." *Serta, Inc.*, 2012 WL 844284, at *3 (internal citation and quotation marks omitted). "The issues, however, do not need to be identical, nor do the named parties need [to] be entirely the same so long as they represent the same interests." *Cuebiq Grp., LLC*, 2025 WL 2419711, at *3 (first citing *Serta, Inc.*, 2012 WL 844284, at *3; and then citing *Pippins v. KPMG LLP*, No. 11-CV-377 (CM), 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011)). Instead, to determine "whether to apply the first-filed doctrine, 'the court considers whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts.'" *Santana*, 2019 WL 6173672, at *3 (quoting *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013)). One "test for whether a lawsuit is duplicative is to ask whether the claim brought in the second-filed action should have instead been raised as a counterclaim in the first-filed action." *Fit and Fun Playscapes, LLC v. Sensory Path, Inc.*, No. 19-CV-11697 (NSR), 2022 WL 118257, at *5 (S.D.N.Y. Jan. 12, 2022) (first citing *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991); and then citing Fed. R. Civ. P. 13(a)).

The Second Circuit has "recognized only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (cleaned up). If the first-filed rule applies, a district court "may dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending resolution of the first-filed case." *Santana*, 2019 WL 6173672, at *5.

Here, however, the Court need not evaluate whether Plaintiff's claims ought to have been brought as counterclaims in the Montana Action, as Defendants argue, triggering the first-filed rule. MTD at 4–8. Instead, "the Court declines to apply the first-filed rule for a basic reason—

there are no longer competing lawsuits." *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 545 (E.D.N.Y. 2018). As other courts in the Circuit have explained, "[w]hen the first-filed lawsuit is dismissed, it cannot take priority over the second-filed lawsuit, because 'dismissed actions . . . do not constitute currently pending claims under the final judgment rule.'" *Id.* (quoting *AEI Life, LLC v. Lincoln Ben. Life Co.*, 305 F.R.D. 37, 44 (E.D.N.Y. 2015)) (collecting cases). "[T]he first-filed rule is not 'an invariable mandate' but rather a 'presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action.'" *Indian Harbor Ins. Co. v. Build Grp., Inc.*, No. 24-CV-4887 (LAP), 2025 WL 770049, at *6 (S.D.N.Y. Mar. 11, 2025) (quoting *Emps. Ins. of Wausau*, 522 F.3d at 275). Accordingly, where "the parties can proceed . . . without the risk of duplicative litigation," the first-filed rule need not apply. *Reed*, 327 F. Supp. 3d at 546; *see also AEI Life, LLC*, 305 F.R.D. at 44 ("Whether to apply the first-to-file rule is ultimately an equitable task within the sound discretion of the district court."); *PBM Holdings, Inc.*, 666 F. Supp. 2d at 369 (cleaned up) (explaining that the first-filed rule is not intended to be applied in a "rigid or mechanical way, and is quite commonly overcome where circumstances warrant").

On March 23, 2026, the Montana district court dismissed the Montana Action with prejudice. Montana Action, ECF No. 46. The risk of "duplicative litigation" in this dispute is therefore nil. *Cuebiq Grp., LLC*, 2025 WL 2419711, at *3. The parties are "free from the vexation of concurrent litigation over the same subject matter," so the first-filed rule does not apply. *Santana*, 2019 WL 6173672, at *2 (internal citation omitted). Accordingly, the Court declines to dismiss or transfer the case on that basis.

## III. Plaintiff's Claims Survive In Part

Because the first-filed rule does not apply, the Court considers Plaintiff's substantive claims alongside Defendants' arguments for dismissal. The Court concludes that Plaintiff's breach of contract claim survives Defendants' motion to dismiss, and Plaintiff's retaliation claim survives in part. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### A. Plaintiff's Breach of Contract Claim Survives

Plaintiff asserts that Breezy Point breached the Oral Agreement between them. AC ¶¶ 62–68; *see id.* ¶ 15 ("Plaintiff Faller is not asserting any claims under the Consulting Services Agreement."). Defendants, by contrast, argue that Plaintiff fails to assert a breach of contract claim because the Consulting Agreement, not the Oral Agreement, "is the governing agreement between the parties." MTD at 12.

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 387 (S.D.N.Y. 2023) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004)). At this stage, taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Faller has sufficiently pled each of these elements.

According to the Amended Complaint, Defendants agreed to hire Faller and give him the title of Chief Investment Officer *after* the Consulting Agreement expired, in or around July 2023. AC ¶ 16. The parties never entered into a written agreement to extend the Consulting Agreement, as the terms of that contract required. *Id.* ¶¶ 12–13. Under the Oral Agreement, meanwhile,

Defendants agreed to pay Faller $10,000 per month and to give him 250 equity shares in Breezy Point in exchange for work that included "preparing for meetings with [pro]spective investors, having meetings with those [pro]spective investors, connect[ing] Defendant Breezy Point with a grant writing company, and being the point person for attorneys with Breezy Point." AC ¶¶ 20, 65. In other words, Faller was offered and accepted consideration for work under the Oral Agreement. *See id.* ¶¶ 16, 63–65. That the Oral Agreement's compensation was the same as it had been under the Consulting Agreement does not negate this separate agreement; instead, according to the Amended Complaint, Faller and Breezy Point entered into a new, oral contract after the Consulting Agreement expired. *See id.*

The January 3 Letter does not alter this conclusion. According to Defendants, Plaintiff admits through counsel's January 3 Letter that the parties' Consulting Agreement, not any oral contract, continued to govern their employment relationship. MTD at 10–12. The Court recognizes that "[w]here a document is referenced in a complaint, 'the documents control and [a] Court need not accept as true the allegations in the amended complaint,'" but the January 3 Letter does not supplant the Amended Complaint's allegations in the manner that Defendants claim. *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quoting *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)). The January 3 Letter is not, itself, a representation of the Oral Agreement reduced to writing. *See* January 3 Letter. Nor is it a separate contract. *See id.* It cannot, therefore, replace Plaintiff's allegations about the parties' agreements as reflected in the Amended Complaint. *See Tongue*, 816 F.3d at 206 n.6. The January 3 Letter is—at most—an ambiguous and muddled retelling of what the parties agreed to, and is insufficient to definitively replace Plaintiff's allegations at this stage of the litigation. *See*

*Goldstein*, 516 F.3d at 56. As Plaintiff properly points out, the January 3 Letter does not even mention the Consulting Agreement. Opp. at 19.

Contrary to what Defendants argue, then, it is not "so obvious" that Plaintiff simply continued to work under the Consulting Agreement after that agreement expired. Reply at 12 (quoting *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 24–26 (2d Cir. 2014)). Instead, the Court must credit Plaintiff's allegations that the Consulting Agreement expired without any written agreement to extend it, and that Plaintiff and Breezy Point subsequently—in or around July 2023—entered into a new, oral agreement. *See* AC ¶¶ 12–22. Accordingly, Plaintiff has sufficiently asserted the first element of his claim: the existence of an agreement.

Plaintiff has "also sufficiently allege[d] the remaining elements of a breach of contract claim." *Kaplan Grp. Invs. LLC*, 694 F. Supp. 3d at 388. Plaintiff asserts that he performed his obligations under the Oral Agreement, AC ¶ 65, that Breezy Point breached the contract by failing to compensate him for his work, *id.* ¶¶ 24, 27, 66, and that he suffered damages as a result, *id.* ¶¶ 66–67.

Therefore, Defendants' motion to dismiss Plaintiff's breach of contract claim is denied.

### B. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Dismissed Without Prejudice

Plaintiff has not, however, stated a claim for breach of the implied covenant of good faith and fair dealing. *See* AC ¶¶ 69–78. "Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 504 (S.D.N.Y. 2021) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004)). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "To state a cause of action for breach of the implied

covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 724 (S.D.N.Y. 2014) (quoting *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004)).

Plaintiff asserts that Defendants breached this covenant by "failing to provide" him with the financial documents that prospective investors had requested before investing in Breezy Point. AC ¶¶ 73–77. Because Defendants failed to share that necessary information with him, Plaintiff argues, the prospective investors chose not to invest in Breezy Point—and Plaintiff therefore did not receive the increased salary and additional equity that Goldstein had promised him. *Id.* ¶¶ 74–77; *see id.* ¶ 26 ("[T]rying to quiet" Plaintiff's complaints about not being paid pursuant to the Oral Agreement, Goldstein promised to raise Plaintiff's salary "to c suite level compensation" of $250,000 to $350,000 per year and give him 1,500 additional equity shares "[w]hen deals are closed."). "Implicit in that agreement," Plaintiff contends, was that Defendants would "provide [him with] the information and tools necessary to close those transactions." *Id.* ¶ 73.

"However, 'under New York law, breach of the implied duty of good faith is considered a breach of the underlying contract,' not an independent cause of action." *Keystone Food Holdings Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 153 (S.D.N.Y. 2020) (quoting *Deutsche Bank Secs., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."). "Therefore, when a

complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

Here, Plaintiff argues that his breach of the implied covenant claim rests on "allegations different from those underlying the accompanying breach of contract claim." *Fox v. Liberty Mut. Fire Ins. Co.*, No. 24-CV-7330 (KMK), 2026 WL 867150, at *4 (S.D.N.Y. Mar. 30, 2026) (quoting *Kaplan Grp. Invs. LLC*, 694 F. Supp. 3d at 388). He explains that his "breach of contract claim focuses on Defendants' failure to pay [him] $10,000 per month and award him his equity," whereas his "implied covenant of good faith claim focuses, instead, on Defendants' failure to provide [him] with necessary information that investors requested, which were necessary to close transactions." Opp. at 20 (citing AC ¶¶ 20–27, 43–48, 63–67, 74). As a result of the latter failure, Plaintiff contends, he was not given a raise. *Id.*

But this argument is unavailing. Plaintiff argues that Defendants breached the covenant of good faith and fair dealing implied *in the Oral Agreement* while simultaneously asserting that the damages he suffered stemmed from his subsequent conversation with Goldstein about a raise. *See* AC ¶¶ 73–77. The Court cannot therefore infer that Defendants, by failing to provide Plaintiff with Breezy Point's financial documentation, "sought to prevent performance of the [Oral Agreement] or to withhold its benefits from the plaintiff"—because the benefits of the Oral Agreement that Defendants withheld from Plaintiff were his original compensation, not his promised raise. *Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 724 (internal citation and quotation marks omitted). And Plaintiff addresses those losses in his breach of contract claim. *See supra* Section III.A.

In other words, the "fruits" of the Oral Agreement—whose implied covenant Plaintiff alleges was breached—were Plaintiff's $10,000 monthly salary and 250 equity shares, not the

$25,000 monthly salary and 1,500 equity shares that underlie his implied covenant claim. Opp. at 20 ("The implied covenant of good faith claim, rather, seeks the additional equity that was promised to him if he closed transactions and the promised increased salary."). But the implied covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract"—here, the Oral Agreement. *S. Telecom Inc.*, 520 F. Supp. 3d at 504 (S.D.N.Y. 2021) (quoting *State St. Bank & Tr. Co.*, 374 F.3d at 170).

Relatedly, Plaintiff does not allege that Goldstein's subsequent promise to increase his salary and equity constituted a separate contract outside of the Oral Agreement, or that the covenant of good faith and fair dealing that would have been implied in *that* contract was breached. AC ¶¶ 69–78; *see* Opp. at 19–21. Accordingly, either Plaintiff's "implied covenant allegations are substantially identical to [his] breach of contract claims," or Plaintiff alleges a breach of an implied covenant in a contract that he does not explicitly claim exists. *Keystone Food Holdings Ltd.*, 492 F. Supp. 3d at 153; *see* Opp. at 19–21. Either way, the Court cannot "recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing" in these circumstances. *Harris*, 310 F.3d at 80.

Accordingly, Defendants' motion to dismiss Plaintiff's implied covenant of good faith and fair dealing claim is granted. The claim is dismissed without prejudice because it appears as though Plaintiff may be able to sufficiently allege this claim, consistent with the above, and that doing so would not be futile.

### C. Plaintiff's Retaliation Claim Survives in Part

Next, Plaintiff sets out two bases to support a retaliation claim under New York Labor Law: first, that Defendants retaliated against him by firing him after he complained about not

being paid; and second, that Defendants retaliated against him by filing the Montana Action after he sent them the January 3 Letter. AC ¶¶ 56–61; *see* N.Y. Lab. Law § 215. Plaintiff successfully pleads the first claim; the second is dismissed with prejudice.

Under New York Labor Law Section 215, it is unlawful to "discharge . . . or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint." N.Y. Lab. Law § 215(1)(a). "A plaintiff establishes a prima facie claim under NYLL § 215 if he demonstrates that while employed by the defendant, he made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) (internal quotation marks omitted). "Upon such a showing, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Id.* (internal quotation marks omitted). "The plaintiff can counter that legitimate, nondiscriminatory reason with evidence that the explanation is pretextual." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011).

First, Defendants take aim at Plaintiff's claim that he was fired for complaining about his unpaid wages. MTD at 16–18. But Defendants do "not meaningfully dispute that [Plaintiff] has established several elements of this retaliation claim." *Fox v. Starbucks Corp.*, No. 19-CV-4650 (AJN), 2021 WL 4155029, at *5 (S.D.N.Y. Sept. 13, 2021), *aff'd*, No. 21-2531, 2023 WL 407493 (2d Cir. Jan. 26, 2023). Defendants only challenge the causation element. MTD at 16–18. "The Amended Complaint wholly fails to allege any causal connection between Plaintiff's termination and his protected activity," Defendants argue. *Id.* at 17. Specifically, Defendants contend that Plaintiff stopped complaining about his unpaid wages after Goldstein offered him a raise and that Plaintiff was fired in October 2024—long after his complaints had ceased. *See id.*

These arguments are unconvincing. "There is no 'bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship.'" *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 245 (S.D.N.Y. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). "Rather, the Court must 'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Id.* Here, Defendants' temporal argument does not pass muster because Plaintiff does not specify the dates on which he complained to Defendants about his pay. *See* AC. Plaintiff simply asserts that he "repeatedly complained" to Goldstein about not being paid "during his employment period." *Id.* ¶¶ 23–25, 58.

Even if Plaintiff did stop complaining about his pay after Goldstein offered him a raise—a fact that the Amended Complaint does not advance—Plaintiff's claim would remain plausible. Plaintiff alleges that Breezy Point continued to not pay him for the duration of his employment period, including after Goldstein's raise offer. *Id.* ¶ 27. Whether or not Plaintiff continued to voice his concerns about these unpaid wages, their specter continued to hang over the business; Defendants knew that they had failed to pay Plaintiff his salary, and they knew that Plaintiff had "repeatedly complained" about it. *Id.* ¶¶ 23–27, 58. That Defendants were able to ward off further complaints by offering Plaintiff a theoretical raise does not, therefore, undercut Plaintiff's retaliation claim. Taking Plaintiff's allegations as true, the Court can therefore draw the reasonable inference that Plaintiff was fired as a result of his complaints. In their motion to dismiss, Defendants put forth no legitimate, nondiscriminatory reason for Plaintiff's firing. *See* MTD at 16–18. Accordingly, Plaintiff's retaliation claim turning on his unpaid wages and firing survives Defendants' motion to dismiss.

Plaintiff's claim related to the Montana Action, however, does not survive Defendants' motion to dismiss. Plaintiff argues that "[t]he Montana Action was filed in bad faith and in retaliation for Plaintiff Faller's January 3, 2025 letter." AC ¶ 37. The Montana Action, Plaintiff continues, "should have never been filed in that State but was done so to purposely cause Plaintiff the burden and expense of having to litigate in Montana." *Id.* ¶ 42. In particular, Plaintiff asserts, "the Montana Action include[d] no allegations to show that" a Montana court could exercise jurisdiction over Plaintiff pursuant to that state's long-arm statute. *Id.* ¶ 40.

However, as Plaintiff himself concedes in his Opposition, in order "to sustain a claim of retaliation based on the filing of a lawsuit," a plaintiff "must allege both that the lawsuit was . . . filed . . . with a retaliatory motive and that it was filed without a reasonable basis in fact or law." Opp. at 23 (quoting *Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023)). And here, Plaintiff's conclusory allegations do not demonstrate that the Montana Action was filed "without a reasonable basis in fact or law." *Id.* Indeed, the Montana district court itself found that it did possess personal jurisdiction over Plaintiff under two separate provisions of Montana's long-arm statute. *See* Montana Transfer Order at 13. Whether or not the Montana Action was filed with a retaliatory motive, then, that it was filed *with* "a reasonable basis in fact or law" necessarily dooms Plaintiff's claim.

Accordingly, Plaintiff's New York Labor Law claim asserting that the Montana Action was filed in retaliation for the January 3 Letter is dismissed. The Court dismisses this claim with prejudice because further amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that requests to replead should be denied when "[t]he problem with [the pleading] is substantive" and "better pleading will not cure it").

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's breach of contract claim survives. So does Plaintiff's retaliation claim as it relates to his complaints about his unpaid wages and firing. Plaintiff's retaliation claim relating to the Montana Action, however, is dismissed with prejudice. His claim for breach of the implied covenant of good faith and fair dealing is dismissed without prejudice. By **October 30, 2026**, Plaintiff may file a second amended complaint consistent with the Court's analysis above—only to add allegations in support of his claim for breach of the implied covenant of good faith and fair dealing. Should Plaintiff fail to file a second amended complaint by that deadline, his claim for breach of the implied covenant of good faith and fair dealing will be dismissed with prejudice.

With respect to default judgment, the Court has previously indicated that it would set a new deadline for Plaintiff to file its motion. Although Defendant Goldstein has appeared pro se in this action, Defendant Breezy Point has failed to obtain legal counsel, and as such, default judgment could be entered against it. *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se."); ECF Nos. 27, 31, 33. However, because Breezy Point's liability is likely tied to any liability against Defendant Goldstein, entering default judgment before the resolution of the claims against Defendant Goldstein could lead to inconsistent results. As such, the Court will continue to hold Plaintiff's deadline to file a default judgment motion in abeyance.

By separate order, the Court will refer this case to Judge McCarthy to set a discovery schedule.

The Clerk of Court is respectfully directed to terminate ECF Nos. 9 and 12.

Dated: September 30, 2026
White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge